SEYFARTH SHAW LLP
Jonathan L. Brophy (SBN 245223)
jbrophy@seyfarth.com
Shardé T. Skahan (SBN 286157)
sskahan@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

SEYFARTH SHAW LLP
Bernard Olshansky (SBN 336251)
bolshansky@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone: (213) 270-9600
Facsimile: (213) 270-9601

Attorneys for Defendant
US FOODS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SYLVIA LOVE,

Plaintiff,

v.

US FOODS, INC., dba U.S. FOOD SERVICE, INC.; a corporation; and DOES 1 through 50 inclusive,

Defendants.

Case No. 2:21-cv-6845

**DEFENDANT US FOODS, INC. NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**

[Los Angeles Superior Court, Case No. 21STCV23055]

Complaint Filed: June 21, 2021
Trial Date: None Set

**Table of Contents**

I. PLAINTIFF SYLVIA LOVE FILED A LAWSUIT AGAINST US FOODS IN CALIFORNIA STATE COURT .......... 1

II. REMOVAL IS TIMELY .......... 2

III. JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP EXISTS IN THIS CASE .......... 3

A. Plaintiff Sylvia Love Is A Citizen Of California .......... 3

B. Defendant US Foods, Inc., Is Not A Citizen Of California .......... 4

C. Doe Defendants May Be Disregarded .......... 5

D. Amount In Controversy Is Satisfied .......... 5

1. Alleged Lost Wages, Emotional Distress, and Punitive Damages Exceed $75,000 .......... 6

2. Potential Attorneys' Fees Also Could Exceed $75,000 .......... 8

IV. VENUE LIES IN THIS COURT .......... 9

V. NOTICE OF REMOVAL .......... 9

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*City of Clarksdale v. BellSouth Telecomms., Inc.*,
428 F.3d 206 (5th Cir. 2005) ....................3

*Conrad Assoc.'s v. Hartford Accident & Ind. Co.*,
994 F. Supp. 1196 (N.D. Cal. 1998) ....................6

*Davenport v. Mutual Benefit Health & Accident Ass'n*,
325 F.2d 785 (9th Cir. 1963) ....................6, 7

*Davis v. HSBC Bank Nevada, N.A.*,
557 F.3d 1026 (9th Cir. 2009) ....................4

*Fristos v. Reynolds Metals Co.*,
615 F.2d 1209 (9th Cir. 1980) ....................5

*Galt G/S v. JSS Scandinavia*,
142 F.3d 1150 (9th Cir. 1998) ....................5, 8

*Gaus v. Miles, Inc.*,
980 F.2d 564 (9th Cir. 1992) ....................6

*Guglielmino v. McKee Foods Corp.*,
506 F.3d 696 (9th Cir. 2007) ....................5

*Harris v. Bankers Life & Cas. Co.*,
425 F.3d 689 (9th Cir. 2005) ....................2

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010) ....................4

*Kanter v. Warner-Lambert Co.*,
265 F.3d 853 (9th Cir. 2001) ....................3

*Kantor v. Wellesley Galleries, Ltd.*,
704 F.2d 1088 (9th Cir. 1983) ....................3

*Kenny v. Wal-Mart Stores, Inc.*,
881 F.3d 786 (9th Cir., Feb. 1, 2018) ....................2

*Kroske v. US Bank Corp.*,
432 F.3d 976 (9th Cir. 2005) ....................................................................6

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
526 U.S. 344 (1999)..................................................................................2

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
720 F.3d 1121 (9th Cir. 2013) ..................................................................2

*Sanchez v. Monumental Life Ins. Co.*,
102 F.3d 398 (9th Cir. 1996) ....................................................................5

*Simmons v. PCR Tech.*,
209 F. Supp. 2d 1029 (N.D. Cal. 2002)....................................................6

*State Farm Mutual Auto Insurance Co. v. Dyer*,
19 F.3d 514 (10th Cir. 1994) ....................................................................3

*Valdez v. Allstate Ins. Co.*,
372 F.3d 1115 (9th Cir. 2004) ..................................................................6

**State Cases**

*Denenberg v. California Dep't of Trans.*,
2007 WL 2827715 (San Diego County Sup. Ct. Sept. 14, 2006).........................8

*DFEH v. County of Riverside*,
2003 WL 24304125 (Riverside Sup. Ct. 2003)..................................................8

*Gallegos v. Los Angeles City College*,
2003 WL 23336379 (Los Angeles County Sup. Ct. Oct. 16, 2003).....................8

*Kivman v. Worldwide Aeros Corp.*,
Los Angeles Superior Court Case No. BC483187 (April 25, 2013 verdict)........6

*Mayo v. Community Development Commission of the County of Los Angeles*,
2014 WL 10105588 (Los Angeles County Sup. Ct.) .........................................8

*McMillan v. City of Los Angeles*,
2005 WL 3729094 (Los Angeles County Sup. Ct. March 21, 2005)...................8

*Miller v. Lockheed Martin*,
2005 WL 4126684 (Los Angeles Sup. Ct. October 7, 2009) ...............................8

*Rodriguez v. Valley Vista Servs.*,
Los Angeles Superior Court Case No. BC473793 (February 15, 2013 verdict) ........ 6

*Salinda v. DirecTV, Inc.*,
Los Angeles Superior Court Case No. BC475999 (August 23, 2013 verdict) ........ 6

*Vasquez v. Los Angeles Cnty. Metro. Transp. Auth.*,
2013 WL 7852947 (Los Angeles Sup. Ct.) ........ 7

*Warehime v. Farmers Ins. Exchange*,
Fresno County Superior Court Case No. 08-CECG-02976 (November 5, 2013 verdict) ........ 6

*Welch v. Ivy Hill Corp.*,
2011 WL 3293268 (Los Angeles Sup. Ct. 2011) ........ 8

**Federal Statutes**

28 U.S.C. § 1332 ........ 1, 5

28 U.S.C. § 1332(a) ........ 9

28 U.S.C. § 1332(a)(1) ........ 3

28 U.S.C. § 1332(c)(1) ........ 4

28 U.S.C. § 1441 ........ 1

28 U.S.C. § 1441(a) ........ 3, 5, 9

28 U.S.C. § 1446 ........ 1, 2

28 U.S.C. § 1446(b) ........ 3

**State Statutes**

Cal. Civ. Proc. Code § 415.10 ........ 3

California Civil Code § 43 ........ 1

California Labor Code § 230.1 ........ 1

Gov. Code §§ 12940(h), 12945.2 ........ 1

Gov. Code § 12940(a) ........ 1

Gov. Code § 12940(k) ........ 1

Gov. Code § 12940(m) ........ 1

Gov. Code § 12940(n) ........ 1

v

DEFENDANT US FOODS, INC.'S NOTICE OF REMOVAL

73690275v.1

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant US FOODS, INC. ("Defendant" or "US Foods") hereby removes the above-referenced action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1441 and 1446, asserting original federal jurisdiction on the basis of diversity, 28 U.S.C. § 1332, and states that removal is proper for the following reasons:

## I. PLAINTIFF SYLVIA LOVE FILED A LAWSUIT AGAINST US FOODS IN CALIFORNIA STATE COURT

1. On June 21, 2021, Plaintiff Sylvia Love ("Plaintiff") filed a Complaint in the Superior Court of the State of California for the County of Los Angeles, entitled *Sylvia Love, Plaintiff v. US FOODS, INC., dba U.S. FOOD SERVICE, INC.; a corporation; and DOES 1 through 50 inclusive*., Case No. 21STCV23055.

2. Plaintiff, a former employee of US Foods, alleges seventeen causes of action for (1) "Employment Discrimination" (Gov. Code § 12940(a)); (2) "Failure to Engage in a Timely, Good Faith Interactive Process" (Gov. Code § 12940(n)); (3) "Failure to Provide Reasonable Accommodation" (Gov. Code § 12940(m)); (4) "Retaliation" (Gov. Code ¶¶ 12940(h), 12945.2); (5) "Failure to Take All Reasonable Steps Necessary to Prevent Discrimination from Occurring" (Gov. Code § 12940(k)); (6) "Wrongful Termination in Violation of Public Policy"; (7) "Intentional Infliction of Emotional Distress"; (8) "Negligent Infliction of Emotional Distress"; (9) "Constructive Termination"; (10) "Sex, Gender, & Age Discrimination and Wrongful Termination in Violation of FEHA"; (11) "Harassment and Hostile Work Environment in Violation of FEHA"; (12) "Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of FEHA"; (13) "Violation of California Civil Code Section 43"; (14) "Violation of California Labor Code Section 230.1 *et seq[.]*"; (15) "Breach of Implied

Contract"; (16) "Breach of Implied Covenant of Good Faith and Fair Dealing"; and (17) "Breach of Contract." (Compl.)

3. A true and correct copy of the Summons and Complaint, as well as other materials served therewith in this action, are attached hereto as **Exhibit A**.

4. On July 27, 2021 Defendant US Foods was served with the Complaint. A true and correct copy of the Service of Process Transmittal is attached as **Exhibit B**.

5. On August 23, 2021, Defendant US Foods filed an Answer to the Complaint. A true and correct copy of the Answer is attached as **Exhibit C**.

6. The exhibits attached hereto constitute all pleadings, process, and orders served on Defendant, and filed by Defendant, in this action.

## II. REMOVAL IS TIMELY

7. The time for filing a Notice of Removal does not begin to run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint"); accord *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir., Feb. 1, 2018) ("We have also emphasized that 'a defendant does not have a duty of inquiry if the initial pleading or other document is 'indeterminate' with respect to removability.' *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) (citing *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 693-94 (9th Cir. 2005)). Accordingly, 'even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document.'").

8. The service of process which triggers the 30-day period to remove is governed by state law. *City of Clarksdale v. BellSouth Telecomms., Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

9. This Notice of Removal is timely because it is filed within thirty (30) days of personal service of the Summons and Complaint on July 27, 2021. 28 U.S.C. § 1446(b); Cal. Civ. Proc. Code § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery.").

## III. JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP EXISTS IN THIS CASE

10. This Court has original jurisdiction over this action under 28 U.S.C. section 1332(a)(1). As set forth below, this action is removable pursuant to the provisions of 28 U.S.C. § 1441(a) as the amount in controversy is in excess of $75,000, exclusive of interest and costs, and is between citizens of different states.

### A. Plaintiff Sylvia Love Is A Citizen Of California

11. According to the Complaint, Plaintiff is a resident of "the County of Los Angeles, State of California." (Complaint ("Compl."), ¶ 1.) For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intent to remain indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Plaintiff's allegation that she is a resident of California is *prima facie* evidence that Plaintiff's domicile is California, and, therefore, Plaintiff is a citizen of California. *State Farm Mutual Auto Insurance Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile").

12. Plaintiff's residence and domicile in California is confirmed by a search of public records available through the LexisNexis Accurint system. That search shows that

Plaintiff resides in Los Angeles County, California, and has resided in California since at least September 1978. (Declaration of Shardé T. Skahan ("Skahan Decl."), ¶ 4, Exh. C.)[1] Additionally, US Foods required Plaintiff, while in its employ, to provide and update any change to her contact information, including her home address, for its employment records. (*See* Declaration of Beth Mooradian ("Mooradian Decl."), ¶ 5.) The last home address Plaintiff provided to US Foods was an address in Whittier, California. (*Id.* at ¶ 5.)

13. Plaintiff's personnel records indicate that she has been consistently employed in California since 2005. Also, Plaintiff provided US Foods with a California address for her IRS Form W-2. (Mooradian Decl., ¶ 5.)

14. Accordingly, US Foods is informed and believes that Plaintiff is, and at all relevant times for the purposes of this removal has been, a citizen of California.

**B. Defendant US Foods, Inc., Is Not A Citizen Of California**

15. Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *See also Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009).

16. US Foods is, and has been at all times since this action commenced, incorporated under the laws of Delaware, with its principal place of business in Illinois. (Mooradian Decl., ¶¶ 3-4.) Per the Unites States Supreme Court's decision in *Hertz Corp. v. Friend*, 559 U.S. 77, 80-821, 92-93 (2010), the appropriate test to determine a corporation's principal place of business is the "nerve center" test. Under the "nerve center" test, the "principal place of business" means the corporate headquarters where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis. *Id.* ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities.").

[1] The Accurint records have been redacted to omit personal identifying information and street addresses. (*See* Skahan Decl., at ¶ C.)

17. The headquarters from which US Foods directs, controls, and coordinates its activities is located in Rosemont, Illinois. (Mooradian Decl., ¶ 4.) Therefore, US Foods is a citizen of Illinois. US Foods is not now, and was not at the time of the filing of the Complaint, a citizen of the state of California for removal purposes.

**C. Doe Defendants May Be Disregarded**

18. Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristos v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of Doe defendants 1 through 50, inclusive, does not deprive this Court of jurisdiction.

19. Because Plaintiff is a citizen of California and Defendant is not a citizen of California, diversity of citizenship exists for purposes of removal.

**D. Amount In Controversy Is Satisfied**

20. Although US Foods denies any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because, based on a preponderance of the evidence, the amount in controversy in this action, exclusive of interest and costs, exceeds the sum of $75,000 based on the allegations, claims, and prayer for relief set forth in the Complaint.

21. An action may be removed if the defendant establishes, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional amount. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). To establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount, the defendant must provide evidence establishing that it is "more likely than not" that the amount in controversy exceeds that amount. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

22. In determining the amount in controversy, the Court must consider the aggregate of general damages, special damages, punitive damages, and attorneys' fees. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory

attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Davenport v. Mutual Benefit Health & Accident Ass'n,* 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law); *Conrad Assoc.'s v. Hartford Accident & Ind. Co.,* 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) ("amount in controversy" includes claims for general and special damages).

23. As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition). When the amount in controversy is not apparent from the face of the complaint, a defendant may state underlying facts supporting its assertion that the amount in controversy exceeds the jurisdictional threshold. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992).

**1. Alleged Lost Wages, Emotional Distress, and Punitive Damages Exceed $75,000**

24. To establish the amount in controversy, a defendant may rely on jury verdicts in cases involving similar facts and claims. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002); *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). California jury verdicts in similar cases often exceed $75,000. *See, e.g., Warehime v. Farmers Ins. Exchange,* Fresno County Superior Court Case No. 08-CECG-02976 (November 5, 2013 verdict) ($749,000 verdict in FEHA age discrimination, disability discrimination, and retaliation case); *Salinda v. DirecTV, Inc.*, Los Angeles Superior Court Case No. BC475999 (August 23, 2013 verdict) ($1,178,341 verdict on plaintiff's claims for disability discrimination, failure to accommodate, failure to prevent, and retaliation claims under the FEHA); *Kivman v. Worldwide Aeros Corp.,* Los Angeles Superior Court Case No. BC483187 (April 25, 2013 verdict) ($486,511 verdict on plaintiff's disability discrimination, failure to accommodate, and wrongful termination claims under the FEHA); *Rodriguez v. Valley Vista Servs.*, Los Angeles Superior Court

Case No. BC473793 (February 15, 2013 verdict) ($21,798,447 verdict on disability discrimination, failure to accommodate, failure to engage in interactive process, wrongful termination and retaliation claims under FEHA, including $16,570,261 punitive damages award). True and correct copies of this verdict information obtained from Westlaw.com are attached. (*See* Skahan Decl., **Exhibit D**.)

25. Plaintiff seeks to recover lost wages and benefits following her September 2019 resignation. (Compl., ¶¶ 53, 61, 70, 76, 85, 91, 148.) A review of US Foods' records shows that for the year preceding Plaintiff's last day of work performed, Plaintiff earned $74,405.81 per year, or approximately $6,200.48 per month. (Mooradian Decl., ¶ 6.) As such, if trial were set for a year from now (*i.e.*, approximately 40 months after the resignation of her employment), Plaintiff's alleged lost wages and benefits would total more than **$248,019.36** ($6,200.48 x 40 months). This figure alone satisfies the $75,000 threshold.

26. Plaintiff further claims entitlement to punitive damages. (Compl., ¶¶ 45, 55, 63, 72, 78, 87, 93, 103.) Requests for punitive damages must be taken into account in ascertaining the amount in controversy. *Davenport*, 325 F.2d at 787. The amount of punitive damages awarded is based on the financial worth of the defendant, and is meant to punish the defendant in such a way that it will have a tangible financial consequence. Without conceding that punitive damages are appropriate or applicable here, for a defendant of Defendant's net worth, it is obvious that a punitive damages award, if assessed, would exceed $75,000.

27. In addition to lost wages, Plaintiff seeks to recover for "humiliation, embarrassment, mental and emotional distress, and discomfort." (Compl., ¶¶ 43, 53, 61, 70, 76, 85, 92, 121, 133, 141, 149.) Plaintiff's claims for these emotional distress damages adds thousands of dollars to the amount in controversy. A review of jury verdicts in California demonstrates emotional distress awards in discrimination cases commonly exceed $75,000. *E.g.*, *Vasquez v. Los Angeles Cnty. Metro. Transp. Auth.*, 2013 WL 7852947 (Los Angeles Sup. Ct.) (award of $1,250,000 for pain and suffering in

discrimination case); *Welch v. Ivy Hill Corp.*, 2011 WL 3293268 (Los Angeles Sup. Ct. 2011) (award of $1,270,000 in pain and suffering to employee in age discrimination action); *Miller v. Lockheed Martin,* 2005 WL 4126684 (Los Angeles Sup. Ct. October 7, 2009) (award of $300,000 in non-economic damages to employee terminated after informing employer of permanent physical limitations due to knee injury); *DFEH v. County of Riverside*, 2003 WL 24304125 (Riverside Sup. Ct. 2003) (jury award of $300,000 in emotional distress damages for failure to accommodate claim). True and correct copies of this verdict information obtained from Westlaw.com are attached. (*See* Skahan Decl., **Exhibit E**.)

**2. Potential Attorneys' Fees Also Could Exceed $75,000**

28. Plaintiff also seeks to recover attorneys' fees. (Compl., ¶¶ 46, 56, 64, 73, 79, 88, 113, 134.) Requests for attorney's fees must be considered in ascertaining the amount in controversy. *See Galt, supra*, 142 F.3d at 1156 (claims for statutory attorney's fees to be included in amount in controversy, regardless of whether award is discretionary or mandatory).

29. Here, if successful, Plaintiff would be entitled to an award of attorneys' fees that itself "more likely than not" would exceed $75,000. Verdicts show that attorneys' fees in employment cases typically exceed $75,000. *See Mayo v. Community Development Commission of the County of Los Angeles*, 2014 WL 10105588 (Los Angeles County Sup. Ct.) (awarding plaintiff attorney fees in the amount of $613,743 in FEHA disability discrimination case); *Denenberg v. California Dep't of Trans.*, 2007 WL 2827715 (San Diego County Sup. Ct. Sept. 14, 2006) (attorney's fees award of $490,000 in case alleging discrimination, harassment, and retaliation); *McMillan v. City of Los Angeles*, 2005 WL 3729094 (Los Angeles County Sup. Ct. March 21, 2005) (attorney's fees award of $504,926 in case alleging discrimination and retaliation for filing lawsuit to redress discrimination); *Gallegos v. Los Angeles City College*, 2003 WL 23336379 (Los Angeles County Sup. Ct. Oct. 16, 2003) (attorney's fees award of $159,277 for claim of

discrimination and retaliation). The awards in these cases are attached. (*See* Skahan Decl., **Exhibit F**.)

30. For each of the foregoing reasons, while Defendant denies any liability as to Plaintiff's claims, it is now "more likely than not" that the amount in controversy exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a).

## IV. VENUE LIES IN THIS COURT

31. Venue lies in this Court pursuant to 28 U.S.C. § 1441(a), as this action originally was brought in the Superior Court of the State of California, County of Los Angeles, Central Judicial District. Plaintiff resides in the County of Los Angeles.

## V. NOTICE OF REMOVAL

32. Defendant will give notice of the filling of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of the State of California in and for the County of Los Angeles, Central Judicial District. This Notice of Removal is concurrently being served on Plaintiff.

WHEREFORE, US Foods prays that this civil action be removed from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California.

DATED: August 25, 2021

Respectfully submitted,

SEYFARTH SHAW LLP

By: /s/ Shardé T. Skahan
Jonathan L. Brophy
Shardé T. Skahan
Bernard D. Olshansky
Attorneys for Defendant
U.S. Foods, Inc.

# EXHIBIT A

lectronically FILED by Superior Court of California, County of Los Angeles on 07/09/2021 12:23 PM Sherri R. Carter, Executive Officer/Clerk of Court, by V. Delgadillo,Deputy Clerk

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

NOTICE TO DEFENDANT:
(AVISO AL DEMANDADO): US FOODS, INC. dba U.S. FOOD SERVICE, INC., ~~a corporation;~~ and ~~Inclusive, Defendants.~~
DOES 1 through 50, Inclusive, Defendants.

YOU ARE BEING SUED BY PLAINTIFF:
(LO ESTÁ DEMANDANDO EL DEMANDANTE): SYLVIA LOVE, an individual, Plaintiff,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California
111 North Hill Street
Same
Los Angeles, CA 90012

CASE NUMBER: *(Número del Caso):* 21stcv23055

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Debra A. Opri, Esq. [SBN: 140208] (323) 658-6774 (323) 658-5160
Opri & Associates, APLC
8383 Wilshire Blvd.
Beverly Hills, CA 90211

DATE: *(Fecha)* 07/09/2021

Sherri R. Carter Executive Officer / Clerk of Court

Clerk, by *(Secretario)* V. Delgadillo, Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citation use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

NOTICE TO THE PERSON SERVED: You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:
3. [X] on behalf of *(specify)*: US Foods, Inc., dba U.S. Food Service, Inc.; a corporation

under:
- [X] CCP 416.10 (corporation)
- [ ] CCP 416.20 (defunct corporation)
- [ ] CCP 416.40 (association or partnership)
- [ ] other *(specify)*:
- [ ] CCP 416.60 (minor)
- [ ] CCP 416.70 (conservatee)
- [ ] CCP 416.90 (authorized person)

4. [X] by personal delivery on *(date)*: 7-27-2021

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

Electronically FILED by Superior Court of California, County of Los Angeles on 06/21/2021 12:37 PM Sherri R. Carter, Executive Officer/Clerk of Court, by C. Monroe,Deputy Clerk
21STCV23055
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Lia Martin

Debra A. Opri, Esq. (SBN 140208)
OPRI & ASSOCIATES, APLC
8383 Wilshire Blvd., Suite 830
Beverly Hills, California 90211-2407
Telephone (323) 658-6774
Facsimile (323) 658-5160
email: debraopri@msn.com

Attorneys for Plaintiff
SYLVIA LOVE

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

SYLVIA LOVE, an individual;

Plaintiff,

v.

US FOODS, INC., dba U.S. FOOD SERVICE, INC.; a corporation; and DOES 1 through 50, Inclusive,

Defendants.

CASE NO.: 21STCV23055

COMPLAINT FOR DAMAGES

1. Employment Discrimination (Gov. Code § 12940(a));
2. Failure to Engage in a Timely, Good Faith Interactive Process (Gov. Code § 12940(n));
3. Failure to Provide Reasonable Accommodation (Gov. Code § 12940(m));
4. Retaliation (Gov. Code §§ 12940(h), 12945.2.);
5. Failure to Take All Reasonable Steps Necessary to Prevent Discrimination from Occurring (Gov. Code § 12940(k));
6. Wrongful Termination in Violation of Public Policy;
7. Intentional Infliction of Emotional Distress;
8. Negligent Infliction of Emotional Distress;
9. Constructive Termination;
10. Sex,Gender & Age Discrimination and Wrongful Termination in Violation of FEHA
11. Harassment and Hostile Work Environment in Violation of FEHA
12. Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of FEHA
13. Violation of California Civil Code Section 43
14. Violation of California Labor Code Section 230.1 et seq
15. Breach of Implied Contract
16. Breach of Implied Covenant of Good Faith and Fair Dealing
17. Breach of Contract

Amount demanded exceeds $25,000.00
[UNLIMITED CIVIL CASE]

DEMAND FOR JURY TRIAL

Plaintiff, SYLVIA LOVE, alleges as follows:

GENERAL ALLEGATIONS

1. At all times mentioned in this Complaint, PLAINTIFF, SYLVIA LOVE (hereinafter referred to as "PLAINTIFF") was, and is, an individual residing in the County of Los Angeles, State of California.

2. PLAINTIFF is informed and believes, and based thereon alleges, that at all times mentioned in this Complaint Defendant US FOODS, INC. dba U.S. FOODSERVICE, INC. [hereinafter "DEFENDANT EMPLOYERS"], was, and is, a corporation organized and existing under the laws of the State of California, with its principal place of business in Los Angeles County, California.

3. PLAINTIFF is informed and believes that DEFENDANT EMPLOYERS acted in the capacity of "employers" with respect to PLAINTIFF's employment, and as defined by FEHA. DEFENDANT EMPLOYERS employed five [5] or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and is otherwise subject to the provisions of FEHA and other applicable laws.

4. PLAINTIFF is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these Defendants by such fictitious names. PLAINTIFF will amend this Complaint to allege their true names and capacities when ascertained. PLAINTIFF is informed and believes and thereon alleges that each of these fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that PLAINTIFF's injuries as herein alleged were proximately caused by the aforementioned Defendants.

5. PLAINTIFF is informed and believes and on that basis alleges that, at all relevant times, each of the Defendants, whether named or fictitious, was the agent, employee or alter ego of each of the other Defendants, and in doing the things alleged to have been done in the Complaint, acted within the scope of such agency or employment, or ratified the acts of the other.

6. The unlawful employment practices complained of herein occurred in Los Angeles County, California. Venue is proper in this county in accordance with Section 395(a) of the California Code of Civil Procedure because (a) the DEFENDANTS, or some of them, reside

in Los Angeles County, are doing business here; and (b) the injury occurred in Los Angeles County.

7. This action is brought pursuant to the Fair Employment and Housing Act (FEHA) — Government Code sections 12900-12996 et seq. — and the corresponding regulations promulgated by the California Fair Employment and Housing Council; California Civil Code 43; California Labor Code section 230.1 et seq.. The amount in controversy exceeds the minimal threshold of this Court. Within the time provided by law, PLAINTIFF filed charges with the California Department of Fair Employment and Housing ["FEHA"] alleging discrimination, retaliation, harassment against DEFENDANT EMPLOYERS. PLAINTIFF has received notice of 'right to sue' letters to sue in California Superior Court pursuant to California Government Code section 12965, subdivision (b). PLAINTIFF files this action within one year of receipt of her 'right to sue' letter from FEHA, and has, therefore, properly exhausted her administrative remedies and has timely filed this complaint. PLAINTIFF received a Right to Sue dated December 1, 2020 thereafter. This action is being filed within one year from the date PLAINTIFF was issued a Right to Sue. A true and correct copy of same is attached hereto as **Exhibit A**.

## FACTUAL ALLEGATIONS

8. PLAINTIFF's employment as a Territory Manager Sales for DEFENDANT EMPLOYERS began on or about January 2005.

9. PLAINTIFF received favorable performance reviews during her tenure with DEFENDANT EMPLOYERS.

10. On or about August 2015, PLAINTIFF reported to DEFENDANT EMPLOYER that she was the victim of domestic violence by a male co-worker, Kenneth Kajeton Barnoski [hereinafter "BARNOSKI"], with who she had been in a long term Marvin [marital type] relationship with and which ended in August 2015. She reported that a restraining order was granted against BARNOSKI. PLAINTIFF regularly provided DEFENDANT EMPLOYERS copies of the restraining orders issued in this matter through to conclusion in the criminal and civil courts. The domestic violence caused PLAINTIFF emotional and physical injuries, all of

which were communicated to DEFENDANT EMPLOYER.

11. PLAINTIFF was a long time victim of domestic violence involving BARNOSKI. Although injured as a result of the domestic violence perpetrated by BARNOSKI, and which finally ended their relationship in August, 2015, when she took out a restraining order against BARNOSKI, PLAINTIFF was able to work as long as her injuries and restraining orders, were accommodated.

12. PLAINTIFF worked with ongoing requests that the restraining order be acknowledged and the necessary accommodations be in place.

13. BARNOSKI was criminally charged with felony domestic violence and lesser additional misdemeanor charges. BARNOSKI was criminally tried and convicted for the August 28, 2015 violent assault upon PLAINTIFF on May 12, 2017. PLAINTIFF was listed as a protected person on the protective order. A copy of this protective order was provided to DEFENDANT EMPLOYER immediately thereafter, and which then supplemented and replaced the prior and regularly issued domestic violence restraining orders PLAINTIFF had secured and had been providing to DEFENDANT EMPLOYER since August 2015.

14. DEFENDANT EMPLOYER was well aware of the facts of the domestic violence and the existence and orders of the restraining orders, including the accommodations PLAINTIFF had sought. DEFENDANT EMPLOYER was also aware that a Marvin Action had been filed, and litigated which included domestic violence issues, and for which the Court found BARNOSKI liable.

15. From August 2015, and through to the time PLAINTIFF was constructively terminated, or about September 25, 2019, DEFENDANT EMPLOYER made the intentional decision to favor BARNOSKI in the workplace over PLAINTIFF. DEFENDANT EMPLOYER provided BARNOSKI placement in meetings, electing to have PLAINTIFF not attend some meetings that BARNOSKI attended. DEFENDANT EMPLOYERS blamed PLAINTIFF for BARNOSKI's 'troubles,' and sided with BARNOSKI both at the workplace and in the courtroom on his behalf.

16. DEFENDANT EMPLOYER by and through its management, including but not limited to

PLAINTIFF'S supervisor, Mychelle Eschardies [hereinafter "MICHELLE"], began a campaign of 'finding fault' with PLAINTIFF. PLAINTIFF received increasingly negative evaluations, and given written reprimands. PLAINTIFF was denied some training opportunities, and denied attendance to functions that are provided to further employee knowledge. PLAINTIFF was denied the opportunity of attending the annual sales award banquet, because BARNOSKI was a recipient of one of the many awards, and management did not want her there. In most instances, the 'all boys club' mentality of DEFENDANT EMPLOYER was that BARNOSKI was being rewarded and protected rather than PLAINTIFF, for reasons including there existed a relationship, both working and social, between BARNOSKI and management, that management sought to protect at the expense of PLAINTIFF. DEFENDANT EMPLOYER is a boys club and always has been, while PLAINTIFF was there. Upper management comprised of nearly 99% males. The men stuck together and protected one another, making sure they took care of one another with sales, customers, and policies. The few women that were given leads were chosen friends of the good ol' boys club, including MICHELLE.

17. When PLAINTIFF spoke to MICHELLE about why PLAINTIFF was not being allowed to attend training and business functions, MICHELLE told PLAINTIFF that things would be easier for PLAINTIFF if she would just drop the restraining order. PLAINTIFF believed that as long as the restraining order was in effect, her job opportunities would be limited, including that she was now getting on the 'wrong side' of management, because of the restraining order. PLAINTIFF knew that BARNOSKI was well liked at DEFENDANT EMPLOYER, was a high earner, and that his needs came first to DEFENDANT EMPLOYER, including keeping PLAINTIFF away from him, and not the other way around.

18. From August 2015 through September 2019, PLAINTIFF believed she was being denied employee benefits and privileges, as well as basic job training and opportunities available to others of her position, in retaliation for exercising her personal right to seek law enforcement and judicial protections from BARNOSKI. PLAINTIFF did not receive incentives for customers such as baseball tickets, even though other Territory Sales

Managers did. DEFENDANT EMPLOYER chose BARNOSKI a male, over PLAINTIFF, a female. BARNOSKI maintained personal and social relationships with DEFENDANT EMPLOYER management such that the male bonding that existed between BARNOSKI was cultivated outside of the office environment as well. PLAINTIFF determined that while BARNOSKI benefitted from being in a position to secure incentives and accommodations, rather than PLAINTIFF herself, the denial of these benefits to PLAINTIFF hindered her ability to move upwards without these incentives and accommodations.

19. DEFENDANT EMPLOYER knew the effects of the domestic violence on PLAINTIFF, and yet they prioritized BARNOSKI over her on all levels of the employment workplace. DEFENDANT EMPLOYER continued their ongoing favoritism of BARNOSKI to the point where they determined they wanted PLAINTIFF out of the company, and took ongoing steps to accomplish their goal of forcing her out.

20. On or about September 25, 2019, PLAINTIFF determined that before the number of reprimands and intentional steps taken to remove her from DEFENDANT EMPLOYER culminated in her termination, she would resign in order that she could still be employable. PLAINTIFF did not want to resign a company she had been with since early 2005, but she needed to have a job, and she knew that it would be easier to gain employment without having a termination on her record. PLAINTIFF resigned herself to the fact that before they fired her, she would quit, knowing that their intent to force her out, had worked.

21. PLAINTIFF believed that based upon what she believed to be the constructive termination by DEFENDANT EMPLOYER, she was discriminated against as a woman, and as a person who had sought legal protection against a co-worker everyone liked, such that she was being retaliated against in the workplace with the sole intent to get her to quit, or to lay a foundation in which to terminate PLAINTIFF once she had filed a restraining order against BARNOSKI.

22. At the time PLAINTIFF was granted a restraining order [protective order] against BARNOSKI, he challenged it and engaged DEFENDANT EMPLOYER HR Manager, Marlene Grove [hereinafter 'MARLENE'], Juvenal Hernandez, and an attorney hired by

DEFENDANT EMPLOYER to testify on his behalf. MARLENE stated that it was an inconvenience to DEFENDANT EMPLOYER and asked that the matter be dropped. DEFENDANT EMPLOYER allowed management to involve itself into what was a personal matter, and chose to side with BARNOSKI. Instead, at the time the protective order was amended to include an extension of distance among other things which DEFENDANT EMPLOYER was bound by, the work environment for PLAINTIFF deteriorated. From that moment forward, PLAINTIFF'S time at DEFENDANT EMPLOYER became a living hell. PLAINTIFF suffered, as she was afraid of BARNOSKI'S wrath, and now losing her job as well. DEFENDANT EMPLOYER made it very clear to PLAINTIFF that they were taking sides and that they were siding with BARNOSKI.

23. After BARNOSKI was convicted, DEFENDANT EMPLOYER determined to keep BARNOSKI as, an employee rather than terminating him, or, of accommodating PLAINTIFF pursuant to the protective order and PLAINTIFF'S needs.

24. From the time the domestic violence occurred in August, 2015 through to the time PLAINTIFF left her employment with DEFENDANT EMPLOYER, there were many incidents causing her to feel discriminated against, retaliated against and harassed by DEFENDANT EMPLOYER. PLAINTIFF'S manager constantly harassed her. She constantly accused PLAINTIFF of not doing her job. This was even after PLAINTIFF had long proven herself and done her job since 2005. PLAINTIFF'S manager constantly thereafter embarrassed her several times accusing PLAINTIFF of being at fault and not doing her job. Fellow employees were copied on emails from the manager to PLAINTIFF which accused PLAINTIFF of poor work performance. The allegations were not true. PLAINTIFF'S manager's harassment of PLAINTIFF became intolerable. PLAINTIFF began feeling sick, with stomach aches and headaches due to the stress and anxiety her manager caused her including these false allegations against PLAINTIFF. It's interesting that while PLAINTIFF'S manager told PLAINTIFF that she was 'failing', several of PLAINTIFF'S larger customers praised PLAINTIFF for going above and beyond in her service to them. PLAINTIFF'S manager was newly assigned to PLAINTIFF when the

domestic violence incident occurred. BARNOSKI continued to work for the manager both PLAINTIFF and BARNOSKI now reported to. They were not separated. PLAINTIFF asked why she was being moved to another territory and her new manager told her that it was because PLAINTIFF was the 'problem' not BARNOSKI. This is when the retaliation really began. Marlene Grove [hereinafter "GROVE"], had PLAINTIFF meet in her office with PLAINTIFF' and BARNOSKI's manager, as well as MICHELLE [now PLAINTIFF' new manager], Juvenal Hernandez [hereinafter 'HERNANDEZ"], [both PLAINTIFF and BARNOSKI' manager]. HERNANDEZ chuckled and asked PLAINTIFF, "What did you do to him". "He [BARNOSKI] hit you for a reason, so WHAT did YOU do to him?!"

25. PLAINTIFF had the second largest customer with DEFENDANT EMPLOYER. Despite PLAINTIFF'S work performance with this second largest customer the manager continued to belittle PLAINTIFF and to accuse her of 'not doing her job.'

26. In September, 2018, PLAINTIFF brought on a very large customer. PLAINTIFF'S manager refused to provide PLAINTIFF with the support needed to capture the rest of the business and to maintain it. The manager instead put up 'road blocks' to prevent PLAINTIFF from capturing not only all of the business of this particular customer, but that of so many other potential business customers. This became very 'typical' of this manager. She demonstrated a lack of support, and chose not to do what was necessary to build this client base for PLAINTIFF. The manager instead did not respond to the customer's requests, and PLAINTIFF lost this customer in August, 2019. The customer specifically told PLAINTIFF that it was not PLAINTIFF who had lost them, but rather her support staff, ie., management. The customer was clear that the reason why they were not going to buy from DEFENDANT EMPLOYER any longer was due to PLAINTIFF'S manager refusing to assist with various issues they had with DEFENDANT EMPLOYER. This included the manager refusing to pick up unwanted product even though it was company policy to do so. PLAINTIFF begged her manager to do this, and the manager still refused. The manager told PLAINTIFF that if she wanted to pick it up, PLAINTIFF herself could drive the company van and get it. This is notwithstanding the fact that PLAINTIFF was in sales, and did not operate product

delivery or pickup. PLAINTIFF advised her manager that this was something that could be life threatening what she was directing PLAINTIFF to do, as PLAINTIFF had not been trained on how to drive the company van and by doing so, could endanger her life and the life of others. The manager responding that she would not approve the 'pickup' for this customer and that PLAINTIFF could figure it out.

27. PLAINTIFF on another occasion asked her manager for Dodger tickets for a customer which was the second largest customer in DEFENDANT EMPLOYER company. The manager refused this request. PLAINTIFF then learned that a co worker for a very small customer thereafter asked for tickets and received them without incident. The co worker advised PLAINTIFF that it was very clear since PLAINTIFF joined the territory that the manager was going out of her way to harass PLAINTIFF.

28. From the time PLAINTIFF was given a protective order against BARNOSKI, until the time she was forced out of the DEFENDANT EMPLOYER company, PLAINTIFF was subjected to retaliation for having a restraining order against a co worker, who was well liked. At one point DEFENDANT EMPLOYER maintained an online calendar to keep track of PLAINTIFF's and BARNOSKI's schedules. Many times PLAINTIFF could not get a connection and when she asked her manager the cause, the manager told her that she had a hard time believing PLAINTIFF as no one else seemed to have connection issues. PLAINTIFF would be prevented from going to her office to get her business taken care of. This included meetings with credit managers, sales coordinator, marketing department or any thing that was necessary to conduct her business and to take care of her customers. Consequently, PLAINTIFF would be prevented from attending a scheduled event.

29. In April, 2018, PLAINTIFF reached out to DEFENDANT EMPLOYER'S HR department, Gregory Haines [hereinafter "HAINES']. PLAINTIFF sought to get the support needed at a local level. Again in June/July 2019 PLAINTIFF reached out to HAINES, stating things had gotten unbearable.

30. In January, 2019 a new HR manager was hired in the La Mirada office where PLAINTIFF worked. His name was Rich Padilla [hereinafter "PADILLA"]. He was to be

MARLENE'S replacement. The VP of DEFENDANT EMPLOYER, Steve Nicolazzi filled him in on the protective order that existed with BARNOSKI. However, in September 2019, PADILLA called PLAINTIFF into his office and asserted that there was no protective order in PLAINTIFF'S file. He advised PLAINTIFF that it was all too much for PLAINTIFF'S manager to handle, and that things were changing. On June 27, 2019, PLAINTIFF asked HR to please help her as her manager was harassing her for not dropping the protective order and not having it removed. The manager constantly asked PLAINTIFF to get rid of it. She told PLAINTIFF that BARNOSKI is not doing anything to PLAINTIFF and that she did not have time for all of this. The manager was angry at PLAINTIFF because PLAINTIFF continued to refuse to remove the protective order. PADILLA told PLAINTIFF that all he could do was to have both PLAINTIFF and the manager meet him in his office to discuss the matter. PLAINTIFF was scared because it became clear to her that DEFENDANT EMPLOYER did not care about her protection via a protective order; only that it was a 'problem' for them. They made it clear that they were not going to deal with it, and that PLAINTIFF had no future at the company. PLAINTIFF'S manager was clear via her demands that PLAINTIFF was being pushed out of the company in favor of BARNOSKI. The Manager told PLAINTIFF that if PLAINTIFF did not meet her "expectations," PLAINTIFF would be let go. PLAINTIFF believed this was regarding the removal of the protective order.

31. At this time, PLAINTIFF won the company award for "Best of the West." She was the #1 sales rep and despite this, her manager continued to threaten PLAINTIFF with termination for 'not performing.'

32. On June 20, 2019, PLAINTIFF requested 4 hours off to be taken 8 days later on June 28, 2019. This request was made timely. PLAINTIFF'S manager refused this request. PLAINTIFF was told that PLAINTIFF had used all of her sick time, even though PLAINTIFF had not. PLAINTIFF had, in fact, 8 hours left. PLAINTIFF reached out to the payroll department to assist with resolution of what was an error by the manager. However, even after that, PLAINTIFF'S manager insisted that PLAINTIFF take a full day. The

payroll department informed PLAINTIFF that what the manager was doing was against company policy and that PLAINTIFF had every right to take the time as requested, as sick time could be taken in increments of 2 hours.

33. On September 25, 2019, PLAINTIFF had enough. Believing she was being forced out of the company, she tendered her resignation to protect her employability, and because she could not take the retaliation and harassment any longer.

34. PLAINTIFF was fifty-five (55) years of age at the time DEFENDANT EMPLOYERS constructively terminated her employment. PLAINTIFF had been with DEFENDANT EMPLOYER over fourteen [14] years.

35. On or about December 6, 2019, PLAINTIFF exhausted her administrative remedies by timely filing a Complaint of Discrimination with the California Department of Fair Employment & Housing ("DFEH") regarding the claims alleged herein against DEFENDANT EMPLOYERS. The DFEH issued its right-to-sue on December 1, 2020.

## FIRST CAUSE OF ACTION

**(Unlawful Discrimination [Employment], Pursuant to Government Code § 12940(a), Against DEFENDANT EMPLOYERS and DOES 1 through 50)**

36. PLAINTIFF re-alleges and incorporates paragraphs 1 through 35, inclusive, of this Complaint, as though fully set forth herein.

37. This action is brought pursuant to the California Fair Employment and Housing Act ("FEHA") — Government Code sections 12900-12996 — and the corresponding regulations of the California Fair Employment and Housing Commission. Pursuant to Government Code section 12940, subdivision (a), it is an unlawful employment practice for an employer to refuse to hire or employ a person, or to discriminate against a person in the terms, conditions, or privileges of employment on the basis of, among other things, the person's disability, perceived disability, or age.

38. At all times mentioned in this Complaint, DEFENDANT EMPLOYERS regularly employed five or more persons, bringing DEFENDANT EMPLOYERS within the provisions of FEHA, which prohibits employers or their agents from, among other things, discriminating

against employees on the basis of the employee's disability and/or perceived disability, or age.

39. From at least August, 2015, up to and including the date that DEFENDANT EMPLOYERS terminated PLAINTIFF's employment, PLAINTIFF suffered from disabilities which limited at least one major life activity—a woman working in an environment that was retaliatory because PLAINTIFF wanted her employer to protect her from a co worker via a protective order due to domestic violence. DEFENDANT EMPLOYERS were at all times aware of PLAINTIFF's disabilities via communication with PLAINTIFF as well as through PLAINTIFF providing DEFENDANT EMPLOYER with a copy of a protective order concerning a co worker BARNOSKI.

40. At all times mentioned in this Complaint, PLAINTIFF was qualified for, and could perform the essential functions of her position with DEFENDANT EMPLOYERS, with or without a reasonable accommodation.

41. DEFENDANT EMPLOYERS engaged in unlawful employment practices in violation of FEHA by terminating PLAINTIFF from her position on the basis of PLAINTIFF's disability and/or perceived disability, gender, age, and for engaging in protected activities.

42. PLAINTIFF believes and alleges that her disability and/or perceived disability, age, and her engagement in protected activities, were substantial and determining factors in DEFENDANT EMPLOYERS' decision to terminate her employment.

43. As a direct, foreseeable, and proximate result of DEFENDANT EMPLOYERS' discriminatory acts, PLAINTIFF has suffered and continues to suffer aggravation of her emotional and physical suffering due to DEFENDANT EMPLOYER'S retaliation and harassment, substantial losses in earnings and job benefits, humiliation, embarrassment, mental and emotional distress, and discomfort, all to PLAINTIFF's damage in an amount in excess of the minimum jurisdiction of this Court, the precise amount of which will be proven at trial.

44. As a further proximate result of DEFENDANT EMPLOYERS' conduct described in this Complaint, PLAINTIFF has incurred and will continue to incur medical expenses in an

amount according to proof at the time of trial.

45. In doing the acts herein alleged, DEFENDANT EMPLOYERS, through their managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of PLAINTIFF; therefore, PLAINTIFF is also entitled to punitive damages in an amount according to proof at the time of trial.

46. PLAINTIFF, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Government Code section 12965, subdivision (b).

**SECOND CAUSE OF ACTION**

**(Failure to Engage in a Timely, Good Faith Interactive Process to Determine Effective Reasonable Accommodations, Pursuant to Government Code § 12940(n), Against DEFENDANT EMPLOYERS and DOES 1 through 50)**

47. PLAINTIFF re-alleges and incorporates paragraphs 1 through 46, inclusive, of this Complaint, as though fully set forth herein.

48. Under Government Code section 12940, subdivision (n), it is unlawful for an employer to fail to engage in a timely, good faith interactive process to determine effective reasonable accommodations for an employee or applicant with a disability. Section 12940, subdivision (n), also requires an employer who regards an employee as disabled to engage with that employee in a timely, good faith interactive process to determine effective accommodations for that perceived disability.

49. From at least August 2015 forward, PLAINTIFF was disabled within the meaning of FEHA. Alternatively, DEFENDANT EMPLOYERS perceived PLAINTIFF as being disabled.

50. DEFENDANT EMPLOYERS were aware of PLAINTIFF's disability because PLAINTIFF made it known to DEFENDANT EMPLOYERS by consistently, repeatedly, and frequently informing DEFENDANT EMPLOYERS of the disability, both verbally, as well as in writing. DEFENDANT EMPLOYERS were also aware of PLAINTIFF's need for accommodations.

51. PLAINTIFF in good faith requested that DEFENDANT EMPLOYERS engage in an

interactive process to determine an effective reasonable accommodation for her disability. Alternatively, DEFENDANT EMPLOYERS were on notice of PLAINTIFF's need for an accommodation and therefore had a duty to commence interactive process.

52. DEFENDANT EMPLOYERS violated Government Code section 12940, subdivision (n), by failing to engage in a good faith interactive process with PLAINTIFF. Instead, DEFENDANT EMPLOYERS terminated PLAINTIFF's employment.

53. As a direct, foreseeable, and proximate result of DEFENDANT EMPLOYERS' failure to engage in the interactive process, PLAINTIFF has suffered and continues to suffer aggravation of her injuries, both physical and emotional, substantial losses in earnings and job benefits, humiliation, embarrassment, mental and emotional distress, and discomfort, all to PLAINTIFF's damage in an amount in excess of the minimum jurisdiction of this Court, the precise amount of which will be proven at trial.

54. As a further proximate result of DEFENDANT EMPLOYERS' conduct described in this Complaint, PLAINTIFF has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

55. In doing the acts herein alleged, DEFENDANT EMPLOYERS, through their managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of PLAINTIFF; therefore, PLAINTIFF is also entitled to punitive damages in an amount according to proof at the time of trial.

56. PLAINTIFF, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Government Code section 12965, subdivision (b).

## THIRD CAUSE OF ACTION

**(Failure to Provide Reasonable Accommodations, Pursuant to Government Code § 12940(m), Against DEFENDANT EMPLOYERS and DOES 1 through 50)**

57. PLAINTIFF re-alleges and incorporates paragraphs 1 through 56, inclusive, of this Complaint, as though fully set forth herein.

58. Under Government Code section 12940, subdivision (m), it is unlawful for an employer to

fail to make reasonable accommodation for an applicant or employee with a disability. The employer also has an affirmative duty to, among other things, inform employees and applicants with a disability of other job opportunities and ascertain whether the employee or applicant is interested in, or qualified for said positions. Additionally, an employer who regards an employee or applicant as disabled also has a duty to provide reasonable accommodation for that employee.

59. From on or around August, 2015 forward, PLAINTIFF was disabled and/or perceived by DEFENDANT EMPLOYERS as disabled and, as such, DEFENDANT EMPLOYERS, who were aware of PLAINTIFF's disability, and/or who regarded PLAINTIFF as disabled, had a duty to provide PLAINTIFF with reasonable accommodation.

60. DEFENDANT EMPLOYERS violated Government Code section 12940, subdivision (m), by refusing to provide reasonable accommodation to PLAINTIFF, and by terminating PLAINTIFF's employment instead.

61. As a proximate result of DEFENDANT EMPLOYERS' violation of Government Code section 12940, subdivision (m), PLAINTIFF has suffered and continues to suffer aggravation of her injuries, both physical and emotional, substantial losses in earnings and job benefits, humiliation, embarrassment, mental and emotional distress, and discomfort, all to PLAINTIFF's damage in an amount in excess of the minimum jurisdiction of this Court, the precise amount of which will be proven at trial.

62. As a further proximate result of DEFENDANT EMPLOYERS' conduct described in this Complaint, PLAINTIFF has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

63. In doing the acts herein alleged, DEFENDANT EMPLOYERS, through their managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of PLAINTIFF; therefore, PLAINTIFF is also entitled to punitive damages in an amount according to proof at the time of trial.

64. PLAINTIFF, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of

trial, pursuant to Government Code section 12965, subdivision (b).

## FOURTH CAUSE OF ACTION

**(Retaliation, Pursuant to Government Code §§ 12940(h) & 12945.2, Against DEFENDANT EMPLOYERS and DOES 1 through 50)**

65. PLAINTIFF re-alleges and incorporates paragraphs 1 through 64, inclusive, of this Complaint, as though fully set forth herein.

66. Government Code section 12940, subdivision (h), provides that it is unlawful for an employer to discriminate against any person because the person has engaged in protected activities.

67. Government Code section 12945.2 and the corresponding regulations, also known as "CFRA," prohibit employers or their agents from discriminating and/or retaliating against employees who exercise or intend to exercise the right to family care and medical leave.

68. PLAINTIFF requested a reasonable accommodation for her disability and opposed DEFENDANT EMPLOYERS' failure to provide her with an accommodation, which are protected activities under FEHA.

69. In response to PLAINTIFF's protected activities, DEFENDANT EMPLOYERS constructively terminated PLAINTIFF's employment on or about September 25, 2019.

70. As a proximate result of DEFENDANT EMPLOYERS' actions, PLAINTIFF has suffered and continues to suffer aggravation of her injuries, substantial losses in earnings and job benefits, humiliation, embarrassment, mental and emotional distress, and discomfort, all to PLAINTIFF's damage in an amount in excess of the minimum jurisdiction of this Court, the precise amount of which will be proven at trial.

71. As a further proximate result of DEFENDANT EMPLOYERS' conduct described in this Complaint, PLAINTIFF has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

72. In doing the acts herein alleged, DEFENDANT EMPLOYERS, through their managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of PLAINTIFF; therefore, PLAINTIFF is also entitled to punitive damages in an amount

according to proof at the time of trial.

73. PLAINTIFF, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Government Code section 12965, subdivision (b).

## FIFTH CAUSE OF ACTION

**(Failure to Take All Reasonable Steps Necessary to Prevent Discrimination and Retaliation from Occurring, Pursuant to Government Code § 12940(k), Against DEFENDANT EMPLOYERS and DOES 1 through 50)**

74. PLAINTIFF re-alleges and incorporates paragraphs 1 through 73, inclusive, of this Complaint, as though fully set forth herein.

75. During the course and scope of PLAINTIFF's employment, and after, DEFENDANT EMPLOYERS failed to prevent the above-referenced acts of discrimination and retaliation towards PLAINTIFF in violation of Government Code section 12940, subdivision (k). DEFENDANT EMPLOYERS' failure to undertake a prompt and adequate investigation and its complete failure to prevent the above-alleged acts of discrimination/retaliation constitutes an unlawful employment practice.

76. As a proximate result of DEFENDANT EMPLOYERS' violation of Government Code section 12940, subdivision (k), PLAINTIFF has suffered and continues to suffer aggravation of her injuries, both physical and emotional, substantial losses in earnings and job benefits, humiliation, embarrassment, mental and emotional distress, and discomfort, all to PLAINTIFF's damage in an amount in excess of the minimum jurisdiction of this Court, the precise amount of which will be proven at trial.

77. As a further proximate result of DEFENDANT EMPLOYERS' conduct described in this Complaint, PLAINTIFF has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

78. In doing the acts herein alleged, DEFENDANT EMPLOYERS, through their managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of PLAINTIFF; therefore, PLAINTIFF is also entitled to punitive damages in an amount

according to proof at the time of trial.

79. PLAINTIFF, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Government Code section 12965, subdivision (b).

**SIXTH CAUSE OF ACTION**

**(Wrongful Termination in Violation of Public Policy**

**Against DEFENDANT EMPLOYERS and DOES 1 through 50)**

80. PLAINTIFF re-alleges and incorporates paragraphs 1 through 79, inclusive, of this Complaint, as though fully set forth herein.

81. The above-described conduct of DEFENDANT EMPLOYERS constitutes discrimination and wrongful termination of PLAINTIFF in violation of public policy embodied in FEHA, codified at California Government Code sections 12900–12996.

82. California's workers' compensation laws, namely California Labor Code section 132a, also establish a fundamental public policy against the actions of any employer who discharges, threatens to discharge, or in any manner discriminates against an employee because the employee has, among other things, been injured on the job and/or because the employee has filed or intends to file a workers' compensation claim. By their conduct set forth herein, DEFENDANT EMPLOYERS also violated the fundamental public policy of California's workers' compensation laws, embodied in, among other statutes, Labor Code section 132a.

83. It is the announced public policy of the State of California that individuals are guaranteed the right to safety via a protective order. As such, any agreement which interferes with the right of employees to seek the protections under a protective order, or any threat to an employee who intends to maintain a protective order in the work place, is against public policy.

84. By their conduct set forth herein, DEFENDANT EMPLOYERS violated the fundamental public policies of this State. Specifically, DEFENDANT EMPLOYERS violated these provisions when they retaliated against PLAINTIFF because of her desire to maintain a protective order against a co worker.

85. As a proximate result of DEFENDANT EMPLOYERS' actions, PLAINTIFF has suffered and continues to suffer stress, aggravation of her injuries, both physical and emotional, substantial losses in earnings and job benefits, humiliation, embarrassment, mental and emotional distress, and discomfort, all to PLAINTIFF's damage in an amount in excess of the minimum jurisdiction of this Court, the precise amount of which will be proven at trial.

86. As a further proximate result of DEFENDANT EMPLOYERS's conduct described in this Complaint, PLAINTIFF has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

87. In doing the acts herein alleged, DEFENDANT EMPLOYERS, through its managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of PLAINTIFF; therefore, PLAINTIFF is also entitled to punitive damages in an amount according to proof at the time of trial.

88. As a further result of the wrongful conduct of DEFENDANT EMPLOYERS, PLAINTIFF is also entitled to attorneys' fees and costs pursuant to California Code of Civil Procedure section 1021.5.

## SEVENTH CAUSE OF ACTION

**(Intentional Infliction of Emotional Distress**

**Against DEFENDANT EMPLOYERS and DOES 1 through 50)**

89. PLAINTIFF re-alleges and incorporates paragraphs 1 through 88, inclusive, of this Complaint, as though fully set forth herein.

90. The conduct of DEFENDANT EMPLOYERS, as set forth above, was so extreme and outrageous that it exceeded the boundaries of a decent society and lies outside the compensation bargain. DEFENDANT EMPLOYERS' conduct was intended to cause PLAINTIFF severe emotional distress, or was done in conscious disregard of the probability of causing severe emotional distress. DEFENDANT EMPLOYERS' conduct was also in direct violation of California law and public policy.

91. As a proximate result of the wrongful conduct of DEFENDANT EMPLOYERS, PLAINTIFF has sustained substantial losses in earnings and other employment benefits in

an amount according to proof at the time of trial.

92. As a further proximate result of the wrongful conduct of DEFENDANT EMPLOYERS, PLAINTIFF has suffered and continues to suffer humiliation, embarrassment, severe emotional distress, and mental anguish, all to PLAINTIFF's damage in an amount according to proof at the time of trial.

93. In doing the acts herein alleged, DEFENDANT EMPLOYERS, through their managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of PLAINTIFF; therefore, PLAINTIFF is also entitled to punitive damages in an amount according to proof at the time of trial.

EIGHTH CAUSE OF ACTION

(Negligent Infliction of Emotional Distress

Against DEFENDANT EMPLOYERS and DOES 1 through 50)

94. PLAINTIFF re-alleges and incorporates paragraphs 1 through 93, inclusive, of this Complaint, as though fully set forth herein.

95. DEFENDANT EMPLOYERS owed a duty to PLAINTIFF to act as reasonable, prudent persons. This duty includes an obligation to act in a careful, lawful, and prudent manner and in full compliance with applicable law.

96. DEFENDANT EMPLOYERS' conduct toward PLAINTIFF resulted in a breach of DEFENDANT EMPLOYERS' duties to act as reasonable, prudent persons.

97. Emotional distress and stress was a field of danger that DEFENDANT EMPLOYERS should reasonably have anticipated and guarded against.

98. As a proximate result of DEFENDANT EMPLOYERS' breach of their duties, PLAINTIFF suffered legal compensable emotional distress damages.

NINTH CAUSE OF ACTION

(Constructive Termination

Against DEFENDANT EMPLOYERS and DOES 1 through 50)

99. PLAINTIFF re-alleges and incorporates paragraphs 1 through 98, inclusive, of this Complaint, as though fully set forth herein.

100. PLAINTIFF was subjected to discriminatory disparate treatment because of her gender, and her refusal to withdraw a protective order against a co-worker BARNOSKI, a male, which she has a legal right to under the laws of the State of California as regards domestic violence. As set forth above, PLAINTIFF complained verbally and in writing that she was being retaliated against and harassed by DEFENDANT EMPLOYER. After PLAINTIFF was advised of the way DEFENDANT EMPLOYER would handle her request for accommodation based upon the protective order against a co worker, and the increasing harassment and retaliation which intruded upon her ability to perform her job functions, PLAINTIFF felt she had no viable option other than to constructively terminate her employment as she could no longer work for a company that blatantly discriminated against her on account of her gender and age and her reliance upon the criminal system to protect her from co worker BARNOSKI.

101. It is the public policy of the State of California, as expressed in the California Fair Employment and Housing Act, that employees shall not be subjected to disparate treatment on account of their sex, age, or reliance upon their legal rights and entitlements.

102. As a direct and proximate result of PLAINTIFF'S constructive termination in violation of the public policy, PLAINTIFF has suffered and will continue to extreme and severe mental anguish and emotional distress; and she has incurred medical expenses for treatment by health professionals and for other incidental expenses. PLAINTIFF is thereby entitled to general and compensatory damages in amount to be proven at trial.

103. PLAINTIFF is informed and believes and based thereon alleges that the outrageous conduct of DEFENDANT EMPLOYERS described above was done with malice, fraud, and oppression and with conscious disregard for his rights and with the intent, design and purpose of injuring PLAINTIFF. DEFENDANT EMPLOYERS, through its officers, managing agents and/or its supervisors, authorized, condoned and/or ratified the unlawful conduct of all of the other Defendants named in this action. By reason thereof, PLAINTIFF is entitled to punitive or exemplary damages from DEFENDANT EMPLOYERS in a sum according to proof at trial.

TENTH CAUSE OF ACTION

(Sex, Gender and Age Discrimination and Wrongful Termination in Violation of FEHA Against DEFENDANT EMPLOYERS and DOES 1 through 50)

104. PLAINTIFF re-alleges and incorporates paragraphs 1 through 103, inclusive, of this Complaint, as though fully set forth herein.

105. DEFENDANT EMPLOYERS' conduct, as alleged, violated FEHA, Government Code section 12900, et seq., and DEFENDANT EMPLOYERS committed unlawful employment practices, including the following bases for liability:

a. Government Code section 12940, subdivision (a) et seq., prohibits an employer from discharging, barring, refusing to transfer, retain, hire, select, and /or employ and or otherwise discriminating against PLAINTIFF, in whole or in part on the basis of PLAINTIFF's sex, gender, or age;

b. Harassing PLAINTIFF and/or creating a hostile work environment, in whole or in part on the basis of PLAINTIFF's sex or age, in violation of Government Code section 12940, subdivision (j);

c. Failing to take all reasonable steps to prevent discrimination and harassment based on sex or age, in violation of Government Code section 12940, subdivision (k); and,

d. Retaliating against PLAINTIFF for seeking to exercise rights guaranteed under FEHA and/or opposing DEFENDANT EMPLOYERS' failure to provide such rights, in violation of Government Code section 12940, subdivision (h).

e. Wrongfully terminating PLAINTIFF for discriminatory and retaliatory reasons;

f. Subjecting PLAINTIFF to inferior work assignments, working hours, job conditions, pay and benefits.

106. Through the acts described fully above, DEFENDANT EMPLOYERS violated Government Code section 12940, subdivision (a) by discriminating against PLAINTIFF on the basis of sex, gender, and age and despite a wholly satisfactory, competent, and diligent performance to the benefit of DEFENDANT EMPLOYERS, in the course and scope of her employment with DEFENDANT EMPLOYERS.

107. Further, DEFENDANT EMPLOYERS subjected PLAINTIFF to adverse employment actions, including but not limited to, harassment, disparate job treatment, undue scrutiny, sabotage of PLAINTIFF's job duties and wrongful termination.

108. DEFENDANT EMPLOYERS failed to comply with their statutory duty to take all reasonable steps necessary to prevent discrimination due to sex, gender, or age from occurring in the workplace and to prevent it from occurring in the future in violation of Government Code section 12940.

109. PLAINTIFF was harmed by DEFENDANT EMPLOYERS' actions.

110. DEFENDANT EMPLOYERS' acts of subjecting PLAINTIFF to adverse employment actions based on her sex, gender, and age, is a substantial factor in causing PLAINTIFF' harm.

111. PLAINTIFF's protected status as a female and 52 years of age, was a motivating reason(s) for the adverse employment actions, in violation of FEHA.

112. As a result of DEFENDANT EMPLOYERS' actions, PLAINTIFF suffered severe physical sickness, or injury, emotional and mental distress, depression, anguish, humiliation, shame, embarrassment, fright, shock, pain, discomfort and anxiety. These amounts exceed the jurisdictional requirements of this Court.

113. As a result of DEFENDANT EMPLOYERS' conduct as alleged herein, PLAINTIFF has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965, subdivision (b), PLAINTIFF is entitled to recover reasonable attorneys' fees and costs [including expert costs] in an amount according to proof.

## ELEVENTH CAUSE OF ACTION

**(Harassment and Hostile Work Environment in Violation of FEHA)**

**Against DEFENDANT EMPLOYERS and DOES 1 through 50)**

114. PLAINTIFF re-alleges and incorporates paragraphs 1 through 113, inclusive, of this Complaint, as though fully set forth herein.

115. This action is brought pursuant to the California Fair Employment and Practices Act, section 12940, subdivision (j)(1) of the Government Code, which prohibits harassment

against a person on the basis of the person's sex, gender, age, and the corresponding regulations of the California Fair Employment and Housing Commission.

116. At all times mentioned in this Complaint, DEFENDANT EMPLOYERS regularly employed at least one employee bring the DEFENDANT EMPLOYER within the provision of section 12940, et seq. of the Government Code prohibiting employers or their agents from harassing employees on the basis of "sex, gender, and/or age."

117. During PLAINTIFF's employment as alleged herein, DEFENDANT EMPLOYERS, repeatedly engaged in unwelcome, harassing behavior that was derogatory on the basis of PLAINTIFF's sex, gender, and age.

118. As described above, all of this conduct constituted severe and pervasive harassment.

119. PLAINTIFF alleges that the conduct as described in this Complaint was unwelcome and offensive to PLAINTIFF and would have been offensive to any reasonable person in PLAINTIFF's position.

120. PLAINTIFF did not consent to this conduct.

121. As a direct and proximate result of the unlawful conduct as alleged in this Complaint, the PLAINTIFF has suffered and continues to suffer extreme and severe physical sickness and injury, anguish, humiliation, nervousness, anger, tension, anxiety, and emotional distress. PLAINTIFF is presently unaware of the precise amount of these expenses and fees and prays leave of Court to amend this Complaint when the amounts are more fully known.

122. As a further direct and proximate result of the unlawful conduct described herein, the PLAINTIFF has suffered and continues to suffer loss of earning capacity, loss of job opportunity, and other losses.

123. Because PLAINTIFF was harassed in violation of the law, PLAINTIFF is entitled to recover attorneys' fees and costs in this action pursuant to Government Code section 12965, subdivision (b).

124. DEFENDANT EMPLOYERS and DOES 1 through 50's harassment was done intentionally, in a malicious, oppressive, fraudulent manner, entitled PLAINTIFF to punitive damages against DEFENDANT EMPLOYER and DOES 1 THROUGH 50, in an amount according

to proof.

TWELFTH CAUSE OF ACTION

(Failure to Prevent Discrimination, Harassment and Hostile Work Environment in Violation of FEHA

Against DEFENDANT EMPLOYERS and DOES 1 through 50)

125. PLAINTIFF re-alleges and incorporates paragraphs 1 through 124, inclusive, of this Complaint, as though fully set forth herein.

126. At all times herein mentioned, FEHA, Government Code section 12940, subdivision (k), was in full force and effect and was binding on DEFENDANT EMPLOYERS. This statute states that it is an unlawful employment practice in California for an employer 'to fail to take all reasonable steps necessary to prevent discrimination, harassment and retaliation from occurring.'

127. During the course of PLAINTIFF's employment, DEFENDANT EMPLOYERS failed to prevent their employees from engaging in intentional actions that result in PLAINTIFF's being treated less favorably because of PLAINTIFF's protected status [ie., her sex, gender, age, and disability].

128. During the course of PLAINTIFF's employment, DEFENDANT EMPLOYERS failed to prevent their employees from engaging in unjustified employment practices against employees in such protected classes. DEFENDANT EMPLOYERS, condoned, encourage, tolerated, sanctioned, ratified, approved of, and /or acquiesced in discrimination toward and harassment, retaliation of PLAINTIFF.

129. During the course of PLAINTIFF's employment, DEFENDANT EMPLOYERS failed to prevent a pattern and practice by their employees of intentional discrimination, harassment and retaliation on the bases of discrimination of sex, gender, and/or age, and disability, and / or other protected statuses or protected activities.

130. DEFENDANT EMPLOYERS deliberately disregarded PLAINTIFF's complaints, and instead retaliated against PLAINTIFF by denying her requested accommodations, and employment training and benefits, as set forth herein.

131. PLAINTIFF believes and, on that basis, alleges that her sex, gender, age, and disability, and /or other protected status and/or protected activity were substantial motivating factors in DEFENDANT EMPLOYERS' employees' discrimination, harassment, and retaliation of her.

132. As a proximate result of DEFENDANT EMPLOYERS' willful, knowing, and intentional misconduct, PLAINTIFF has sustained and continues to sustain substantial losses of earnings and other employment benefits.

133. As a proximate result of DEFENDANT EMPLOYERS' willful, knowing, and intentional misconduct, PLAINTIFF has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

134. PLAINTIFF has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965, subdivision (b), PLAINTIFF is entitled to recover reasonably attorneys' fees and costs [including expert costs] in an amount according to proof.

135. DEFENDANT EMPLOYERS' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitled PLAINTIFF to punitive damages against DOES 1 through 50, according to proof.

**THIRTEENTH CAUSE OF ACTION**

**(Violation of California Civil Code section 43 )**

**Against DEFENDANT EMPLOYERS and DOES 1 through 50)**

136. PLAINTIFF re-alleges and incorporates paragraphs 1 through 135, inclusive, of this Complaint, as though fully set forth herein.

137. California Civil Code section 43, provides that "[b]esides the personal rights mentioned or recognized in the Government Code, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal assault, from defamation, and from injury to his personal relations.

138. As alleged herein, and in violation of California Civil Code section 43, DEFENDANT

EMPLOYERS, and DOES 1 through 50, and each of them, failed to provide a workplace free from personal insult, assault, and discriminatory comments by failing to act on PLAINTIFF's complaints and protective order, as against a co worker, and that DEFENDANT EMPLOYERS did not take the protective order and her need for accommodations seriously, including that a male manager blamed PLAINTIFF for causing BARNOSKI to hit her. DEFENDANT EMPLOYERS' refusal to take corrective action and to provide protection from offensive behavior violates the law because DEFENDANT EMPLOYERS employees and supervisory employees, were acting during and in the course and scope of employment when they discriminated against and harassed PLAINTIFF.

139. PLAINTIFF is informed and believes, and thereon alleges, that DEFENDANT EMPLOYERS' requirement that PLAINTIFF work in a workplace with co-workers and supervisory personnel's insulting and discriminatory comments were violative of Section 43 of the California Civil Code.

140. By the aforementioned acts and omissions of DEFENDANT EMPLOYERS, and each of them, PLAINTIFF has been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings, reliance damages, costs of suit, and other pecuniary loss in an amount not presently ascertained, but to be proven at trial.

141. As a further direct and legal result of the acts and conduct of DEFENDANT EMPLOYERS, and each of them, as aforesaid, PLAINTIFF has been caused to and did suffer and continues to suffer severe physical, emotional and mental distress, anguish, humiliation, shame, embarrassment, fright, shock, pain, discomfort and anxiety. PLAINTIFF does not know at this time the exact duration or permanence of said injuries, but is informed and believes, and thereon alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

142. As a direct and proximate cause of the aforementioned acts of DEFENDANT EMPLOYERS, and each of them, PLAINTIFF was injured as set forth above, and is entitled to damages.

//

FOURTEENTH CAUSE OF ACTION

(Violation of California Labor Code section 230.1 et seq

Against DEFENDANT EMPLOYERS and DOES 1 through 50)

143. PLAINTIFF re-alleges and incorporates paragraphs 1 through 142, inclusive, of this Complaint, as though fully set forth herein.

144. California Labor Code section 230.5 provides that "(a)(1) An employer shall not discharge or in any manner discriminate or retaliate against an employee who is a victim of an offense listed in paragraph (2) for taking time off from work, upon the victim's request, to appear in court to be heard at any proceeding, including any delinquency proceeding, involving a post arrest release decision, plea, sentencing, post conviction release decision, or any proceeding in which a right of the victim is at issue." Paragraph (2) provides that an offense includes domestic violence.

145. As alleged herein, and in violation of California Labor Code section 230.1 et seq., DEFENDANT EMPLOYERS, and DOES 1 through 50, and each of them, retaliated against PLAINTIFF and did not provide reasonable accommodations to PLAINTIFF as a victim of domestic violence. DEFENDANT EMPLOYERS failed to provide a workplace free from personal insult, assault, and discriminatory comments by failing to act on PLAINTIFF's complaints and protective order, as against a co worker, and that DEFENDANT EMPLOYERS did not take the protective order and her need for accommodations seriously, including that a male manager with BARNOSKI present in the room with PLAINTIFF, blamed PLAINTIFF for causing BARNOSKI to hit her. DEFENDANT EMPLOYERS' refusal to take corrective action and to provide protection from offensive behavior violates the law because DEFENDANT EMPLOYERS employees and supervisory employees, were acting during and in the course and scope of employment when they retaliated against PLAINTIFF, discriminated against and harassed PLAINTIFF, and failed to provide reasonable accommodations for PLAINTIFF.

146. PLAINTIFF is informed and believes, and thereon alleges, that DEFENDANT EMPLOYERS' requirement that PLAINTIFF work in a workplace with co-workers and

supervisory personnel's retaliation against PLAINTIFF were in violation of Section 230.1 et seq of the California Labor Code.

147. DEFENDANT EMPLOYERS failed to engage in a timely, good faith and "interactive process" to provide "reasonable accommodations" to PLAINTIFF, were in violation of Section 230.1 et seq of the California Labor Code.

148. By the aforementioned acts and omissions of DEFENDANT EMPLOYERS, and each of them, PLAINTIFF has been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings, reliance damages, costs of suit, and other pecuniary loss in an amount not presently ascertained, but to be proven at trial.

149. As a further direct and legal result of the acts and conduct of DEFENDANT EMPLOYERS, and each of them, as aforesaid, PLAINTIFF has been caused to and did suffer and continues to suffer severe physical, emotional and mental distress, anguish, humiliation, shame, embarrassment, fright, shock, pain, discomfort and anxiety. PLAINTIFF does not know at this time the exact duration or permanence of said injuries, but is informed and believes, and thereon alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

150. As a direct and proximate cause of the aforementioned acts of DEFENDANT EMPLOYERS, and each of them, PLAINTIFF was injured as set forth above, and is entitled to damages.

**FIFTEENTH CAUSE OF ACTION**

**(Breach of Implied in Fact Contract**

**Against DEFENDANT EMPLOYERS and DOES 1 through 50)**

151. PLAINTIFF re-alleges and incorporates paragraphs 1 through 150, inclusive, of this Complaint, as though fully set forth herein.

152. California implies a covenant of good faith and fair dealing in all contracts between the parties herein, DEFENDANT EMPLOYERS and PLAINTIFF, which contract was entered into in the State of California.

153. As a result of the actions of defendants, and each of them, as set forth hereinabove,

DEFENDANT EMPLOYERS have violated the implied covenant of good faith and fair dealing as against PLAINTIFF, and as a result PLAINTIFF is entitled to damages as requested herein.

154. The actions of DEFENDANT EMPLOYERS, in violation of the implied covenant of good faith and fair dealing have caused PLAINTIFF to suffer damages in an amount according to proof at time of trial.

SIXTEENTH CAUSE OF ACTION

**(Breach of Implied Covenant of Good Faith and Fair Dealing**

**Against DEFENDANT EMPLOYERS and DOES 1 through 50)**

155. PLAINTIFF re-alleges and incorporates paragraphs 1 through 154, inclusive, of this Complaint, as though fully set forth herein.

156. California implies a covenant of good faith and fair dealing in all contracts between the parties herein, DEFENDANT EMPLOYERS and PLAINTIFF, which contract was entered into in the State of California.

157. As a result of the actions of defendants, and each of them, as set forth hereinabove, DEFENDANT EMPLOYERS have violated the implied covenant of good faith and fair dealing as against PLAINTIFF, and as a result PLAINTIFF is entitled to damages as requested herein.

158. The actions of DEFENDANT EMPLOYERS, in violation of the implied covenant of good faith and fair dealing have caused PLAINTIFF to suffer damages in an amount according to proof at time of trial.

SEVENTEENTH CAUSE OF ACTION

**(Breach of Contract**

**Against DEFENDANT EMPLOYERS and DOES 1 through 50)**

159. PLAINTIFF re-alleges and incorporates paragraphs 1 through 158, inclusive, of this Complaint, as though fully set forth herein.

160. On or about February, 2005, PLAINTIFF and DEFENDANT EMPLOYERS entered into a contract in which they agreed that PLAINTIFF would perform sales services for

DEFENDANT EMPLOYERS. The terms of the agreement are as set forth in the Employee Handbook signed by PLAINTIFF as a condition of employment. Attached hereto as **Exhibit B** is a true and correct copy of the operative employee handbook between the parties.

161. PLAINTIFF has performed all the conditions, covenants, promises, and agreements required of her under the terms of her employment.

162. DEFENDANT EMPLOYERS failed and refused and continued to fail and refuse to perform their part of the agreement or to tender such performance.

163. Because of DEFENDANT EMPLOYERS' failure to perform their obligations under the contract, PLAINTIFF has been damaged in a sum according to proof to be proven at time of trial.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF respectfully prays for judgment against DEFENDANT EMPLOYERS as follows:

a. For compensatory damages including, but not limited to, past and future lost wages and benefits, and emotional distress damages, in excess of the minimum jurisdiction of this Court and according to proof;

b. For declaratory relief and injunctive relief;

c. For reasonable attorneys' fees pursuant to California law, including, but not limited to, California Government Code section 12965, subdivision (b), and Code of Civil Procedure section 1021.5; Civil Code section 43; Labor Code section 230.1 et seq.

d. For prejudgment interest on all amounts claimed at the maximum legal rate;

e. For costs of suit herein incurred;

f. For exemplary and punitive damages according to proof; and

g. For any other and further relief that the court considers proper.

///

//

/

REQUEST FOR JURY TRIAL

PLAINTIFF hereby demands a jury in the trial of this matter.

June 1, 2021

OPRI & ASSOCIATES,
A Professional Law Corporation

/s/ Debra A. Opri

DEBRA A. OPRI
Attorneys for Plaintiff
SYLVIA LOVE

# Exhibit A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

December 1, 2020

Via First Class Mail

Sylvia Love
15083 Cullen ST.
Whittier, California 90603

RE: Notice Case closure and Right to Sue
Case Number: 201908-07370128
EEOC Number: 37A-2020-00973-C
Case Name: Love / US Foods, Inc. dba U.S. Foodservice, Inc.

Dear Sylvia Love:

The Department of Fair Employment and Housing (DFEH) has closed your case for the following reason: Insufficient Evidence. Based upon its investigation, the DFEH is unable to conclude that the information obtained establishes a violation of the statute. This does not certify that the respondent is in compliance with the statute. No finding is made as to any other issues that might be construed as having been raised by this complaint.

This is your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act (FEHA) against the person, employer, labor organization or employment agency named in the above-referenced complaint. This is also applicable to DFEH complaints that are filed under and allege a violation of Government Code section 12948, which incorporates Civil Code sections 51, 51.7, and 54. The civil action must be filed within one year from the date of this letter. However, if your civil complaint alleges a violation of Civil Code section 51, 51.7, or 54, you should consult an attorney about the applicable statutes of limitation.

Your complaint is dual filed with the United States Equal Employment Opportunity Commission (EEOC). You have a right to request the EEOC to perform a substantial weight review of our findings. This request must be made within fifteen (15) days of your receipt of this notice. Pursuant to Government Code section 12965, subdivision (d) (1), your right to sue may be tolled during the pendency of the EEOC's review of your complaint. To secure this review, you must request it in writing to the State and Local Coordinator:

EEOC Southern California
Roybal Federal Building
255 East Temple Street, 4th Floor
Los Angeles, California 90012
(213) 894-1100

EEOC Northern California
1301 Clay Street, Suite 1170-N
Oakland, California 94612
(800) 669-4000

Within 10 days of receiving this letter, you may appeal this decision by emailing appeals@dfeh.ca.gov; by calling our Communication Center at 800-884-1684 (voice), 800-700-2320 (TTY) or California's Relay Service at 711; or by writing to:

Appeals Unit
Department of Fair Employment and Housing
2218 Kausen Drive, Suite 100
Elk Grove, CA 95758

Your appeal should include a 1) summary as to why you disagree with the reason; and/or 2) any new detailed information (e.g., documents, records, witness information) that supports your claim. If you appeal, the information you provide will be carefully considered.

Although the DFEH has concluded that the evidence and information did not support a finding that a violation occurred, the allegations and conduct at issue may be in violation of other laws. You should consult an attorney as soon as possible regarding any other options and/or recourse you may have regarding the underlying acts or conduct.

Should you decide to bring a civil action on your own behalf in court in the state of California under the provisions of the FEHA against the person, employer, labor organization or employment agency named in your complaint, below are resources for this. Please note that if a settlement agreement has been signed resolving the complaint, you may have waived the right to file a private lawsuit.

Finding an Attorney
To proceed in Superior Court, you should contact an attorney. If you do not already have an attorney, the organizations listed below may be able to assist you:

- The State Bar of California has a Lawyer Referral Services Program which can be accessed through its Web site at www.calbar.ca.gov, or by calling (866) 442-2529 (within California) or (415) 538-2250 (outside California).
- Your county may have a lawyer referral service. Check the Yellow Pages of your telephone book under "Attorneys."

Filing in Small Claims Court
- The Department of Consumer Affairs (DCA) has a publication titled "The Small Claims Court: A Guide to Its Practical Use" online at http://www.dca.ca.gov/publications/small_claims. You may also order a free copy online, by calling the DCA Publication Hotline at (866) 320-8652, or by writing to them at: DCA, Office of Publications, Design and Editing, 1625 North Market Blvd., Suite N-112, Sacramento, CA 95834.
- The State Bar of California has information on "Using the Small Claims Court" under the "Public Services" section of its Web site located at www.calbar.ca.gov.

Sincerely,

Monique Webb

Monique Webb



Notice of Case Closure and Right to Sue
December 1, 2020
Page 3 of 3

Associate Governmental Program Analyst
(213) 337-4522
monique.webb@dfeh.ca.gov

Cc:

US Foods, Inc. dba U.S. Foodservice, Inc.
ATTN: Sarah VanPelt
15155 Northam St.
La Mirada, CA 90638

Jennifer Holsman Tetreault
Assistant General Counsel, Field Operations, West and Northwest
10410 S. 50th Place
Phoenix, AZ 85044

# Exhibit B

US. FOODS®
CODE OF CONDUCT

DELIVERING INTEGRITY.
2 CODE OF CONDUCT

December 2019

Dear Colleague,

Our Code of Conduct is a public affirmation that we, as a company and as individuals, are committed to doing the right thing. It is grounded in our Cultural Beliefs and the understanding that each of us plays an important role in operating with integrity.

This Code of Conduct sets out expectations for how we work with each other, and with customers, suppliers, communities and government officials. It also offers you helpful resources if you have a question or find yourself in a difficult ethical situation.

Honesty and integrity are the foundation of how we operate, and critical to our company's long-term success. Thank you for your commitment to apply the Code's principles and expectations in your daily work.

Sincerely,

Pietro Satriano
Chairman and
Chief Executive Officer

Kristin Coleman
Executive Vice President,
General Counsel and Chief Compliance Officer

# CONTENTS

ETHICAL DECISION-MAKING 5
SPEAKING UP 6
DELIVERING INTEGRITY IN OUR WORKPLACE 8
Foster Diversity and Inclusion 8
Contribute to a Safe and Productive Workplace 9
Avoid Conflicts of Interest 9
DELIVERING INTEGRITY IN OUR BUSINESS PRACTICES 10
Make and Deliver Food That is Safe to Eat 10
Compete Fairly 10
Respect Laws Around the World 11
Don't Make Improper Payments or Seek Improper Influence 11
Select Suppliers with Integrity 12
Keep Accurate Books and Records 12
Treat Gifts, Entertainment and Travel Responsibly 13
Do Not Trade on or Tip Inside Information 14
Safeguard US Foods' Resources, Confidential Information and Intellectual Property 14
DELIVERING INTEGRITY IN OUR COMMUNITIES 15
Communicate Accurately to the Public 15
Promote Freedom from Hunger and Culinary Industry Opportunity for All 16
Practice Environmental Stewardship and Provide Sustainable Products 17

## ETHICAL DECISION-MAKING

When faced with a difficult decision or situation, follow these steps toward ethical outcomes:

Pause. Does a situation make you uneasy? Are your instincts telling you something is not quite right?

Think. Is your approach consistent with the US Foods Way – how we live, work, lead? Is it consistent with our Code of Conduct? Does it build or lessen our reputation for integrity?

Ask. Ask questions and get help. Talk to your manager, another trusted leader, Human Resources or any member of the Law Department. Contact the Check-In Line with questions or email compliance@usfoods.com.

You Are Empowered – You can deliver great customer service, knowing that US Foods supports you in doing the right thing and conducting business with integrity.

You Have Responsibility – You play a critical role in protecting our culture, our reputation and our brand.

You Have Help – If you are unsure of what to do in a situation, you have resources available to you including leaders at all levels, Human Resources, the Law Department and the US Foods Code of Conduct.

You Have a Voice – When you believe something isn't right, you should speak up and share your concerns knowing that US Foods wants to hear them and does not tolerate retaliation against anyone who raises concerns in good faith.

### THE ROLE OF LEADERS

As a leader, you have a special responsibility to establish a culture of integrity and openness for your team. The way you make decisions, handle concerns, receive different opinions and bad news, will set the foundation for trust and integrity with your teams, customers and stakeholders. Both your individual success and the success of your team depends on the trust and integrity you build together.

### TAKE THESE SIMPLE STEPS TO BUILD A CULTURE OF OPENNESS AND INTEGRITY ON YOUR TEAM:

- Be clear with your team that we all must work with integrity at all times. Ensure your team knows that for results to matter they must be achieved the right way.
- Make sure your team knows you will listen, and respond appropriately, even if they have something difficult to say.
- Lead by example by modeling ethical decision-making.

## SPEAKING UP

Part of building a culture of integrity is creating conditions that encourage speaking up when something does not seem right.

You don't have to have all the details or be certain that something is wrong to raise a concern about an integrity issue or other misconduct. You can trust that the company and its leaders will treat your reports seriously, fairly and promptly; and if something needs to be fixed, we'll take action. We will preserve your confidentiality to the extent possible, and we will inform you when the matter has been closed.

### KNOW THAT YOU WILL NOT SUFFER ADVERSE CONSEQUENCES FOR:

- Refusing in good faith to do something that violates our Code of Conduct, other US Foods® policies or the law. Should you be asked to do something wrong, please report it and seek assistance.
- Raising a concern in good faith about potential misconduct

Cooperating with an investigation. It takes courage to speak up. We understand you might be uncomfortable or anxious, and that is why we do not tolerate retaliation.

### HOW TO REPORT A CONCERN

There are a variety of ways to get help or report when something seems wrong. You may report – anonymously if you choose – through the Check-In Line, our externally hosted hotline, which is available 24 hours a day, seven days a week, with translation services if needed.

**Check-In Line:** 1-888-310-7716
**Web:** http://www.usfoodcheckinline.com
**Email:** compliance@usfoods.com

In addition, you can always raise concerns with your manager, any other US Foods manager, Human Resources, your Associate General Counsel, Field or any member of the Law Department.

### HOW MANAGERS SHOULD HANDLE CONCERNS

If someone comes to you with a concern, you have a responsibility to listen and take appropriate action. Handling concerns appropriately is critical to preserving our associates' trust and protecting US Foods.





IF SOMEONE RAISES A CONCERN, TAKE THESE SPECIFIC STEPS:

- Remove distractions and listen carefully. Thank the person for speaking up – remember that the person raising the concern has just done something difficult and very important for the company
- Respond respectfully and take every concern seriously. You must be committed to addressing the issue.
- Protect the person's confidentiality – avoid discussing the conversation with others on your team except those who need to know (e.g., Human Resources)
- If you are asked to help with the investigation of a matter, be candid and cooperative

As a manager, you should feel empowered to resolve performance issues yourself, in consultation with Human Resources. However, you and your Human Resources professional should immediately escalate any integrity or ethics concerns, or allegations of misconduct or violations of our Code, to the Ethics and Compliance team. If you have a question or are not sure whether you can or should resolve the issue yourself, you can always email compliance@usfoods.com, call the Check-In Line or contact your Field Associate General Counsel, or any member of the Law Department.

## DELIVERING INTEGRITY IN OUR WORKPLACE

### FOSTER DIVERSITY AND INCLUSION

We work better together because of our differences, not despite them.

We best serve both our customers and communities through the diverse skills, experiences, and backgrounds that each of us brings to the company.

HOW WE DELIVER

- We provide equal employment opportunities to all qualified candidates and associates.
- We do not discriminate based on age, ancestry, family or medical care leave, gender identity or expression, genetic information, marital status, medical condition, national origin, physical or mental disability, political affiliation, protected veteran status, race, religion, sex (including pregnancy), sexual orientation or any other characteristic protected by applicable laws, regulations and ordinances.
- We provide reasonable accommodations to qualified associates and do not discriminate against individuals with disabilities.
- We examine our unconscious biases and take steps to create an inclusive culture that makes every associate feel welcome.

Learn More:

Equal Employment and Affirmative Action Policy*

Prohibition Against Discrimination, and Retaliation Policy*

*Question: Our shift supervisor in the warehouse is a woman, and some coworkers and other supervisors on the shift call her names behind her back. Should I ignore this or report it?*

*Answer: We are all responsible for building a respectful workplace. You should report what you've heard to a manager, Human Resources, a member of the Law Department or the Check-In Line so that it can be investigated and addressed. None of us should be disrespected at work.*

### CONTRIBUTE TO A SAFE AND PRODUCTIVE WORKPLACE

- We maintain a work environment that empowers everyone to do their best work.
- A safe workplace inspires trust and allows us all to contribute and succeed. Discrimination, harassment, and unsafe working conditions diminish what we can achieve together.

HOW WE DELIVER

- We treat others with respect and do not tolerate harassment or discrimination.
- We have a safety mindset – we integrate sound safety and health practices into our operations and comply with workplace safety laws and regulations to protect our associates, our co-workers, our partners and our communities.

*Can be found at HRCAFE.

- We ensure our hourly associates are compensated for all hours worked and that they receive required breaks including meal breaks, to ensure their well-being.
- We resolve problems respectfully and never resort to intimidation, threats or violence.
- We do not work under the influence of drugs or alcohol.

Learn More:
Prohibition Against Discrimination, Harrassment and Retaliation Policy*
Pay for All Time Worked Policy*
Workplace Violence Prevention Policy*
Drug- and Alcohol-Free Workplace Policy*

*Question: We are short-handed this week in our warehouse and our supervisor gave us permission to skip lunch so we could finish sooner. Is this permitted?*

*Answer: Wage and hour laws and US Foods® policy do not permit skipping lunches. Hourly associates must clock out for lunch to ensure they get an appropriate break, even when we are very busy. If work is performed during lunch, contrary to our policy, the associate must be paid for that time. Cutting corners with timekeeping is unsafe, illegal and contrary to our policy.*

**Can be found at HRCAFE*

## AVOID CONFLICTS OF INTEREST

We have an obligation to put US Foods interests before others.

Conflicts of interest can arise when our personal relationships, or financial or other interests, might affect our objectivity or duty to US Foods. If we don't navigate potential conflicts of interest carefully, these situations can impact the decisions we make, erode trust within teams and harm the Company's reputation.

### HOW WE DELIVER:

- We avoid situations where a personal relationship or financial interest in another company might influence our decisions.
- We understand that a conflict of interest can exist even if we are convinced that our decisions will not be affected by an outside relationship.
- When conflicts of interest arise, we disclose them and get advice and approval on how to address them.
- Before taking on outside work, we ensure that doing so does not harm US Foods interests.

Learn More:
Conflicts of Interest Policy*

*Question: I am the local sales leader for my market. My brother recently acquired several restaurants in our market. May I participate in seeking his business for US Foods?*

*Answer: This situation requires disclosure as a possible conflict. Disclose the situation so that your manager, together with Human Resources and Ethics and Compliance, can help determine whether the conflict can be addressed to protect all parties.*

## MAKE AND DELIVER FOOD THAT IS SAFE TO EAT

We are a food company, and nothing is more important to us than ensuring that the food we provide to our customers is safe to eat. Food safety is a personal responsibility of every associate at US Foods®. We encourage our associates to raise food safety concerns immediately.

### HOW WE DELIVER

- We comply with all applicable food and consumer product safety laws in every jurisdiction in which we do business
- We follow all food safety and quality protocols in our workplaces and respond quickly when issues arise to help ensure the safety and quality of our products

Learn More:
Product Recall and Recovery Policy*
Responsible Sourcing Policy and Supplier Code*

***Question:*** *I work in receiving operations, and we received a load of produce that did not meet our temperature requirements for receiving. However, we were busy, and my supervisor told me to accept the load anyway. What should I do?*

***Answer:*** *You should always raise concerns that could have food safety implications; if your supervisor does not listen, call your FSQA regional manager or another leader for help immediately.*

## Compete Fairly

The way we compete is as important as what we achieve.

### HOW WE DELIVER:

- We do not enter agreements with competitors that limit competition, whether formally or informally
- We respect competitive bidding processes, and we do not rig or fix the outcomes
- When gathering competitive intelligence, we use appropriate sources, are truthful and do not misrepresent who we are

***Question:*** *I am going to a trade show. May I go to a competitor's booth?*

***Answer:*** *Yes. You may go to the booth and collect any publicly distributed material. However, if you talk to anyone at the booth, identify yourself as a US Foods associate and avoid conversations about pricing, specific customers or markets. A good practice is to consult the Law Department for guidance before you attend.*

**Can be found at HRSAFE.*

*Question: I am friends with a salesperson for a competitor. Occasionally we talk about marketing plans and potential customers. Should I be concerned?*

*Answer: Yes. You may be revealing confidential information. You also may be violating competition laws that ban discussions of marketing and pricing.*

## RESPECT LAWS AROUND THE WORLD

Wherever we conduct business, we follow the law. This helps us to build trust with business partners, customers and governments.

HOW WE DELIVER:

- We follow the laws and regulations of the United States and, as applicable, any country in which we do business
- We comply with global trade controls and economic sanctions that prohibit us from doing business with certain countries, governments, entities and individuals. We comply with laws that govern how food may be imported and exported internationally
- We respond truthfully, appropriately and promptly to government inquiries and requests for information

Learn More:
Responsible Sourcing Policy and Supplier Code*

## DON'T MAKE IMPROPER PAYMENTS OR SEEK IMPROPER INFLUENCE

We do not influence our customers' decisions through improper payments or other improper means. Winning and preserving customers' trust every day is more important than any benefit we might get from doing business improperly.

In some parts of the world, making payments or giving other consideration to get business may be something that others do – we won't. We would rather lose the business than secure it improperly.

HOW WE DELIVER:

- We do not offer and will not pay bribes or kickbacks to anyone, including payments to secure permits or approvals and small payments to speed up a routine government process
- We work with partners that have a reputation for integrity, and we report signs that a representative is unethical or could be paying a bribe
- We make sure that any gifts, hospitality or travel we offer to government officials, healthcare customers or commercial customers are reasonable, pre-approved where necessary and in line with US Foods' policy
- We don't use charitable donations or hires as favors to influence customers

*Can be found at HRCAFE.

Learn More
Anti-Corruption Policy*
Gifts and Entertainment Policy*

*Question: One of my customers is a state university. Recently, my main contact there asked me whether US Foods® could pay his way to a trade convention. What should I do?*

*Answer: Government officials at all levels – federal, state and local – are restricted in what they can accept from vendors such as US Foods. Our policy requires advance approval from the Law Department before giving anything of value to a government official. In this situation, the contact is a state associate, and the request likely exceeds the annual limit we permit for state officials from US Foods.*

## SELECT SUPPLIERS WITH INTEGRITY

We rely on our supplier relationships for our success. To achieve our mission, we need suppliers that are as committed as we are to our company standards.

### HOW WE DELIVER

- We select the best suppliers for the job by carefully considering their proven track record, reputation for integrity and other merits – not based on favoritism.
- We work to eliminate child labor, human trafficking and other labor abuses in our supply chain.

Learn More
Responsible Sourcing Policy and Supplier Code*

## KEEP ACCURATE BOOKS AND RECORDS

Our records are clear, accurate and complete.

We rely on these records to understand our performance and make good decisions. Moreover, investors rely on clear, accurate and complete records to understand our financial results and where we are headed as a company. Finally, these clear, accurate and complete records are necessary to meet our regulatory obligations as a public company.

### HOW WE DELIVER

- We honestly and accurately record and report financial transactions and business information, following applicable laws, regulations and accounting practices.

**Can be found at HRCAFE.*





- We are transparent about our commitments to our partners and customers, and our written contracts reflect the actual economics of the agreement
- We execute financial transactions only with appropriate authorization and record them in compliance with US Foods® accounting practices
- We comply with all applicable laws, including the Sarbanes-Oxley Act of 2002, to ensure that financial reporting is accurate and complete, and internal controls are in place
- When we retain and dispose of documents, we follow established corporate record retention requirements

Learn More:
Records Retention Schedule*
Records Retention Quick Guide*
Anti-Corruption Policy/Accounting and Internal Controls*

Accounting Policies

## TREAT GIFTS, ENTERTAINMENT AND TRAVEL RESPONSIBLY

We demonstrate sound judgment when exchanging business courtesies. Giving and receiving reasonable gifts and entertainment can build goodwill between US Foods and those with whom we do business. But gifts, meals or trips that are extravagant or that lack either transparency or a legitimate purpose may be viewed as bribes or as simply inappropriate. These things erode trust and harm our business.

HOW WE DELIVER:

- We develop positive relationships free from corruption and commercial bribery
- When we offer or accept gifts, hospitality, or travel, we make sure they are reasonable, appropriate, and have a legitimate business purpose
- We never give or accept cash, including gift cards
- We do not solicit gifts, hospitality or travel from third parties, or put them in a position where they feel obligated to provide something in order to do business with us

Learn More:
Gifts and Entertainment Policy*
Travel and Expense Policy*

***Question:*** *May I accept a business meal from a supplier?*

***Answer:*** *In most circumstances, modest and infrequent business meals may be accepted. However, whenever a supplier pays for a meal, always consider the specific circumstances and whether your impartiality could be compromised or appear to others to be compromised.*

*Can be found at URCAFE.

*Question: A vendor I work with just finished an important project for me on time and under budget. I would like to show my appreciation with a gift. What is appropriate?*

*Answer: When we give gifts, we set the tone for how we conduct business – purely on business considerations. As a general rule, we should limit gifts to or from any one vendor or partner to $250 per year (excluding all government officials or healthcare customers for whom more restrictive limits apply). We should also take into account the vendor's gifts and entertainment policy, as we would want them to consider ours.*

## DO NOT TRADE ON, OR TIP, INSIDE INFORMATION

We maintain trust with our investors and the public by respecting financial disclosure laws.

In our work, we may become aware of material, non-public information about US Foods® or companies we do business with. Information is "material" if a reasonable investor would consider it important in deciding whether to buy or sell that company's securities. Information is "non-public" if it has not been broadly communicated to the investing public.

Trading US Foods stock or the stock of any other company based on this information is illegal and breaks trust with our investors and the public.

HOW WE DELIVER:

- We never buy or sell any securities based on material, non-public information
- We do not give anyone tips regarding material, non-public information, whether family, friends or colleagues
- We do not recommend or suggest that anyone trade in the securities of another company we do business with
- We consult with the Law Department before buying or selling public securities where we have questions as to whether we may be in possession of material, non-public information

Learn More:
Insider Trading Policy
Restricted Trading Window Policy

*Question: My family and friends often ask me about US Foods and whether they should buy stock. Usually I tell them what I know about our business and suggest they buy stock. Is this a problem?*

*Answer: The same rules about inside information apply whether you buy or sell stock yourself or if you give the information to someone else, known as "tipping." If a relative or friend buys stock based on material, non-public information that you give him or her, both of you could be liable for violation of securities laws. You should be cautious about such conversations and consult the Law Department if you are unsure.*

## SAFEGUARD US FOODS RESOURCES, CONFIDENTIAL INFORMATION AND INTELLECTUAL PROPERTY

We are responsible stewards of US Foods resources, including information and technology resources.

We use company resources, including information and ideas, to perform our jobs every day. These resources belong to US Foods®; we owe it to our investors to use them responsibly and in ways that preserve trust and add value.

We might lose our competitive advantage if we disclose US Foods confidential information. We also lose trust if we disclose confidential information that we learn from the companies with whom we do business. Protecting in formation and ideas, whether our own or those of others, is crucial to our business success and builds our reputation as a trustworthy partner.

HOW WE DELIVER:

- We spend US Foods funds wisely, and guard against waste and abuse
- We understand that business-related data is US Foods property. We use best practices to protect access to confidential information and avoid discussing it in common spaces or with colleagues who don't need to know it
- We do not use confidential information for non-US Foods business use, and we maintain confidentiality even if we stop working for US Foods
- We preserve US Foods' own intellectual property rights through copyrights, trademarks and other forms of protection that safeguard the value of our innovation
- We respect the confidentiality and intellectual property rights of others, and do not use confidential information without authorization

Learn More:

Acceptable Use of Information Assets Policy*
Travel and Expense Policy*
Information Security Policy*

*Question: I am able to get an early start on my day by returning calls during my train ride to work. Is this a problem?*

*Answer: You should be careful not to discuss non-public company information in public places such as taxis, elevators, or at confrences or trade shows where someone might hear you. When it is necessary to conduct a phone call in a public place, be aware of your surroundings. When flying, ensure you use a privacy screen if you plan to use your laptop.*

**Can be found at HRCAFÉ.*



## DELIVERING INTEGRITY IN OUR COMMUNITIES

### COMMUNICATE ACCURATELY TO THE PUBLIC

Our internal and external communications must be honest and accurate.

What we say and how we say it matters. We will win and preserve the trust of our investors and the public only if they know they can rely on what we tell them.

HOW WE DELIVER:

- We make full, accurate and timely financial disclosures in all public statements and the reports and documents we submit to the U.S. Securities and Exchange Commission
- We listen carefully to feedback and questions from investors and other stakeholders
- We do not speak on behalf of the company on particular issues unless authorized to do so, including lobbying elected or government officials. We direct analyst and media inquiries to Investor Relations or Corporate Communications
- We make sure that any communications about our products and services are honest and accurate

Learn More:
Corporate Disclosure and Regulation FD Policy*
Electronic Social Networking Policy*

### PROMOTE FREEDOM FROM HUNGER AND CULINARY INDUSTRY OPPORTUNITY FOR ALL

We are privileged to be able to give back to the communities in which we live and work – empowering people with both nourishment and opportunity.

Our philanthropy and associate volunteerism efforts focus on hunger relief and culinary education for underserved populations.

HOW WE DELIVER:

- US Foods® supports non-profits, including local food banks, through product and financial contributions and volunteer activities by our associates
- US Foods provides economic opportunity to underserved youth and tackles the talent shortage in the foodservice industry through the US Foods Scholars Program. The program provides financial support and professional development opportunities to underserved students seeking a higher education in the culinary arts

*Can be found at HRCAFE.

## PRACTICE ENVIRONMENTAL STEWARDSHIP AND PROVIDE SUSTAINABLE PRODUCTS

We're continually improving the efficiency of our facilities and fleet, reducing our environmental footprint.

Because diners today are more interested than ever before in where their food comes from and how it's made, US Foods® is committed to providing an extensive portfolio of sustainably sourced products.

HOW WE DELIVER:

- We work diligently to reduce the energy intensity of our business, building Leadership In Energy and Enviromental Design (LEED)-certified buildings, installing solar arrays, reducing miles driven, right-sizing our vehicles and using alternative fuel vehicles to improve efficiency
- Our Serve Good® program features a growing portfolio of products, developed in collaboration with our suppliers, that adhere to responsible practices. Every Serve Good product must come with a claim of responsible sourcing or contribution to waste reduction
- Every Serve Good product must meet strict packaging standards that are designed to reduce waste, prioritize the use of recycled materials and help minimize our ecological footprint

US. FOODS
© 2019 US Foods, Inc. 12-2019-2019092604

## EQUAL OPPORTUNITY AND AFFIRMATIVE ACTION

Equal opportunity is important to the Company, which is why we ban unlawful discrimination. That ban includes discrimination against associates because of their: race, color, religion, sex, gender identity or expression, sexual orientation, pregnancy, status as a parent, age, marital status, national origin, ancestry, citizenship status, physical or mental disability or serious medical condition, genetic information, political beliefs, status as a veteran, or anything else protected by applicable law.

This policy extends to all aspects of employment at our Company, including recruiting, hiring, training, promotions, discipline, and all other personnel actions.

US Foods engages in affirmative action measures to ensure that qualified applicants are employed, and that associates are treated during employment, without regard to their race, color, religion, sex, sexual orientation, gender identity, national origin, disability or protected veteran status.

If you believe that you or any other associate has faced any unlawful discrimination, you should report it right away, by using any of the ways described in the Report the Behavior section of the Prohibition Against Discrimination, Harassment, and Retaliation Policy below. In response, the Company will follow the procedures outlined in the Investigation of Complaints section of the Prohibition Against Discrimination, Harassment, and Retaliation Policy.

## ACCOMMODATION OF DISABILITIES, PREGNANCY, AND RELIGION

If you need a reasonable accommodation for a disability or religious reasons, you should talk to your local Human Resources Representative. US Foods is committed to providing reasonable accommodations that do not place an undue hardship on the Company.

In accordance with applicable law, US Foods will also provide reasonable accommodations to any pregnant associate who, according to the advice of her medical provider, requests an accommodation in order to perform her job duties.

US Foods will also make reasonable accommodations for dress and grooming practices, in accordance with applicable law.

If you have any questions regarding a disability or any need for an accommodation, you may discuss them confidentially with your local Human Resources Representative. If you make a request or report an issue, you will not face any retaliation or negative action. However, you may need to provide medical documentation or other information to support your request or alternatives considered. The Company's policy is to keep any information regarding a disability confidential and not disclose it, except on a need-to-know basis or otherwise in accordance with applicable law.

## PROHIBITION AGAINST DISCRIMINATION, HARASSMENT, AND RETALIATION

The Company prohibits discrimination and harassment of any kind and any associate who engages in such conduct toward another associate will face discipline, up to and including termination.

Harassment includes inappropriate conduct based on any protected status, including: race, color, religion, sex, gender, sexual orientation, pregnancy, status as a parent, age, marital status, national origin, ancestry, citizenship status, physical or mental disability, medical condition, genetic information, political beliefs, military or veteran status, or any other characteristic protected by law.

For purposes of this policy, gender includes gender identity or expression, transgender identity, pregnancy, childbirth or related medical condition, and gender stereotyping. The Company is committed to providing a work environment that is free of unlawful discrimination, including harassment that is based on any legally protected status. US Foods will not tolerate any form of harassment that violates this policy.

The Company also prohibits threats and bullying, and unprofessional or discourteous actions designed or intended to harm other associates. Any inappropriate remarks, slurs, jokes or other comments will not be tolerated.

Sexual harassment or discrimination or similar inappropriate behavior may also violate applicable local law. US Foods prohibits such conduct regardless of whether it rises to the level of a legal violation.

You need to use good judgment and never make inappropriate or harassing comments that violate this policy. This is true whether or not the use of the inappropriate remark, joke or slur is meant to be a joke or is not meant to be offensive.

This policy applies to everyone working at or with the Company. This policy and the law forbid any associate, manager, supervisor, officer, director, client, vendor, or any third party that an associate encounters in connection with Company business, to harass, discriminate, or retaliate against any Company associate, applicant, contractor, intern, or volunteer, on the basis of any legally protected status or activity, including via electronic or other communication media.

Inappropriate behavior will not be tolerated at Company locations or in any other settings, including business trips or social events. This policy also prohibits offensive conduct that does not rise to the violation of law, as explained below.

*Forms of Inappropriate Conduct*

Some examples of conduct prohibited under this policy include:

- Sexual innuendos, and racial or sexual epithets, slurs, off-color jokes, propositions, suggestive or insulting sounds
- Sexually suggestive messages, posters or drawings, whether electronic or in person
- Sexually suggestive objects or pictures, graphic commentaries, inappropriate staring or leering, or obscene gestures
- Unwanted physical contact of any kind, including unwanted touching or hugging, interference with any individual's normal work movement, or assault
- Threatening or carrying out retaliation as a result of a negative response to harassment

US Foods prohibits this conduct in the workplace, even if the conduct is not sufficiently severe or pervasive to constitute unlawful harassment.

*Sexual Harassment*

Sexual harassment is a problem that deserves special mention. Harassing conduct based on gender often is sexual in nature but sometimes is not. This policy forbids harassment based on gender regardless of whether the offensive conduct is sexual in nature. Any unwelcome conduct based on gender is also forbidden by this policy regardless of whether the individual engaged in harassment and the individual being harassed are of the same or are of different genders.

According to the U.S. Equal Employment Opportunity Commission ("EEOC"), unwelcome sexual advances, requests for sexual favors, and other verbal, physical or visual conduct based on sex constitute unlawful sexual harassment when:

- There is an implicit or explicit understanding that submission to the conduct is a condition of the individual's employment
- Submission to or rejection of the conduct is the basis for an employment decision
- The harassment interferes with the individual's work performance or creates an environment that is intimidating, hostile or offensive

This policy forbids harassment based on gender regardless of whether it rises to the level of a legal violation. Examples of gender-based harassment forbidden by this policy include (1) offensive sex-oriented verbal kidding, teasing or jokes; (2) repeated unwanted sexual flirtations, advances or propositions; (3) verbal abuse of a sexual nature; (4) graphic or degrading comments about an individual's appearance or sexual activity; (5) offensive visual conduct, including leering, making sexual gestures, the display of offensive sexually suggestive objects or pictures, cartoons or posters; (6) unwelcome pressure for sexual activity; (7) offensively suggestive or obscene letters, notes or invitations; (8) offensive physical contact such as patting, grabbing, pinching, or brushing against another's body; or (9) sexual favoritism.

*Report the Behavior*

If you know about conduct that is inconsistent with this policy, you need to report it right away. US Foods has an Open Door Policy, and there are a few ways you can report the issue, which may include the following:

- Talk to your supervisor
- Contact the toll-free Check-In Line at 1-888-310-7716 or www.usfoodcheckinline.com
- Contact your local Human Resources Representative
- Notify the Chief Human Resources Officer in the Corporate Office at: US Foods, 9399 W. Higgins Road, Suite 500, Rosemont, Illinois 60018

If you don't feel comfortable talking about it with your manager, you don't have to do so. There are other people available to you. Talk to your local Human Resources Representative, the next-level supervisor, or your Location Manager.

If for any reason you don't feel you can talk to these people about the problem, contact the toll-free "Check-In Line" at 1-888-310-7716 or www.usfoodcheckinline.com. Your report will be confidential, which means that neither the third party that receives your call nor US Foods will seek to identify you. If you choose this option, you may provide a contact option that does not identify you to ensure that the Company can contact you if the Company has further questions. We're committed to preventing discrimination, harassment, and retaliation, but we can only do that if you report issues when they come up. Everyone, no matter their role, is required to report harassment or other behavior that is inconsistent with this policy.

Any manager or supervisor who is aware of conduct inconsistent with the policy or who receives a report of conduct inconsistent with the policy must report it immediately to his or her local Human Resources Representative unless it is more appropriate to report the concern in one of the other ways described above.

This policy includes inappropriate conduct by a third party, including contractors and vendors.

*Investigation of Complaints*

The Company will investigate complaints swiftly and effectively, and take steps to prevent issues in the future. To that end, both the reporting party and the party who allegedly violated this policy will be offered an opportunity to be interviewed or to otherwise respond. While we will always try to keep the complaint confidential, we do have the right to inform people involved in the investigation on a need-to-know basis, and under certain limited circumstances, may have to disclose information to third parties.

If an investigation reveals that a violation of this policy or other inappropriate conduct has occurred, then US Foods will take corrective action, including discipline up to and including termination, reassignment, changes in reporting relationships, training, or other measures the Company deems appropriate under the circumstances, regardless of the job positions of those involved. The Company may take corrective action for any conduct that violates Company policy and is discovered in investigating reports made under this policy, regardless of whether the conduct amounts to a violation of law or even a violation of this policy. If the person who engaged in prohibited conduct is not employed by the Company, then the Company will take whatever corrective action is reasonable and appropriate under the circumstances.

*Non-Retaliation*

US Foods forbids that any associate treat any other associate or former associate or applicant adversely for reporting discrimination and/or harassment, for assisting another associate or applicant in making a report, for cooperating in a discrimination and/or harassment investigation, or for filing an administrative claim with the EEOC or a state governmental agency. Nothing in this policy, however, prevents the Company from taking action against an associate who raises a concern in bad faith.

If you engage in retaliation, you will face discipline, including termination. All associates who experience or witness any conduct they believe to be retaliatory should immediately follow the reporting procedures stated above.

*Filing an External Complaint*

If you feel you have been subjected to harassment, discrimination or retaliation, while you are encouraged to raise an internal complaint, you always may file a complaint with your state's respective civil rights agency and/or the EEOC. State and federal laws require that complaints/charges be filed within a certain amount of days from alleged incidents of discrimination, harassment or retaliation. Places where you may find information that explains these requirements and other related information, such as detailed filing instructions, include state-managed websites. Some states require that state agency contact information be listed in this policy, and that information (as well as contact information for the EEOC in those states) is set forth below.

| Illinois | Office Locations | | | Complaint Deadline |
|---|---|---|---|---|
| Illinois Department of Human Rights | Chicago<br>100 West Randolph Street<br>10th Floor, Intake Unit, Chicago, IL 6060<br>312-814-6200 or 800-662-3942<br>TTY 866-740-3953 | Springfield<br>222 South College<br>Room 101-A, Intake Unit<br>Springfield, IL 62704<br>217-785-5100 / TTY 866-740-3953 | Marion<br>2309 West Main Street<br>Marion, IL 62959<br>618-993-7453 / TTY 866-740-3953 | 180 days from alleged incident |
| Illinois Human Rights Commission | Chicago<br>100 W. Randolph Street<br>Suite 5-100<br>Chicago, Illinois 60601<br>312-814-6269 / TTY 312-814-4760 | Springfield<br>William G. Stratton Office Building<br>Suite 802, Springfield, Illinois 62706<br>217-785-4350 / TTY 217-557-1500 | | 180 days from alleged incident |
| Equal Employment Opportunity Commission | 500 West Madison Street, Suite 2000, Chicago, Illinois 60661<br>800-669-4000 / TTY 800-869-8001 | | | 300 days from the alleged incident |
| **Maine** | **Office Locations** | | | **Complaint Deadline** |
| Maine Human Rights Commission | 51 State House Station, Augusta, Maine 04333-0051<br>207-624-6050 / TTY 207-624-6064 | | | 300 days from the alleged incident |
| Equal Employment Opportunity Commission | John F. Kennedy Federal Building, 475 Government Center, Boston, MA 02203<br>1-800-669-4000 / TTY 1-800-669-6820 | | | 300 days from the alleged incident |
| **Massachusetts** | **Office Locations** | | | **Complaint Deadline** |
| Massachusetts Commission Against Discrimination | Boston<br>One Ashburton Place, Rm. 601<br>Boston, MA 02108<br>617-994-6000 (voice/TDD) | Springfield<br>424 Dwight Street, Rm. 220<br>Springfield, MA 01103<br>413-739-2145 (voice/TDD) | | 300 days from the alleged incident |
| Equal Employment Opportunity Commission | John F. Kennedy Federal Building, 475 Government Center, Boston, MA 02203<br>1-800-669-4000 / TTY 1-800-669-6820 | | | 300 days from the alleged incident |
| **Vermont** | **Office Locations** | | | **Complaint Deadline** |
| Vermont Attorney General's Office, Civil Rights Unit | 109 State Street, Montpelier, VT 05609<br>802-828-3171 (voice/TDD) | | | 300 days from the alleged incident |
| Equal Employment Opportunity Commission | John F. Kennedy Federal Building, 475 Government Center, Boston, MA 02203 1-800-669-4000 / TTY 1-800-669-6820 | | | 300 days from the alleged incident |
| **Rhode Island** | **Office Locations** | | | **Complaint Deadline** |
| Rhode Island Commission for Human Rights | 180 Westminster Street, 3rd Floor, Providence, RI 02903<br>401-222-2661 / TTY 401-222-2664 | | | 365 days from the alleged incident |
| Equal Employment Opportunity Commission | John F. Kennedy Federal Building, 475 Government Center, Boston, MA 02203 1-800-669-4000 / TTY 1-800-669-6820 | | | 300 days from the alleged incident |

Electronically FILED by Superior Court of California, County of Los Angeles on 06/21/2021 12:37 PM Sherri R. Carter, Executive Officer/Clerk of Court, by C. Monroe,Deputy Clerk
21STCV23055

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Debra A. Opri, Esq. [SBN: 140208]
Opri & Associates, APLC
8383 Wilshire Blvd.
Suite 830
Beverly Hills, CA 90211
TELEPHONE NO.: (323) 658-6774 FAX NO.: (323) 658-5160
ATTORNEY FOR (Name): Sylvia Love

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: Same
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

CASE NAME: Love v. US Foods, Inc.

## CIVIL CASE COVER SHEET

[X] Unlimited (Amount demanded exceeds $25,000)
[ ] Limited (Amount demanded is $25,000 or less)

Complex Case Designation
[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 21STCV23055
JUDGE:
DEPT:

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

Auto Tort
[ ] Auto (22)
[ ] Uninsured motorist (46)

Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

Non-PI/PD/WD (Other) Tort
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[X] Other non-PI/PD/WD tort (35)

Employment
[ ] Wrongful termination (36)
[X] Other employment (15)

Contract
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

Real Property
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

Unlawful Detainer
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

Judicial Review
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

Enforcement of Judgment
[ ] Enforcement of judgment (20)

Miscellaneous Civil Complaint
[ ] RICO (27)
[ ] Other complaint (*not specified above*) (42)

Miscellaneous Civil Petition
[ ] Partnership and corporate governance (21)
[ ] Other petition (*not specified above*) (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (*check all that apply*): a. [ ] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive

4. Number of causes of action (*specify*): 14

5. This case [ ] is [X] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015.*)

Date: June 2, 2021
Debra A. Opri, Esq. [SBN: 140208]
(TYPE OR PRINT NAME)

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

NOTICE

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
CIVIL CASE COVER SHEET
Legal Solutions Plus
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)—Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice–Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief from Late Claim
  - Other Civil Petition

| SHORT TITLE: Love v. US Foods, Inc. | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

**Applicable Reasons for Choosing Court Filing Location (Column C)**

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action (Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage<br>☐ A7221 Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons<br>☐ A7240 Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall)<br>☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270 Intentional Infliction of Emotional Distress<br>☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br>1, 4, 11<br>1, 4, 11 |

| SHORT TITLE: Love v. US Foods, Inc. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Non-Personal Injury/ Property Damage/ Wrongful Death Tort | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice<br>☐ A6050 Other Professional Malpractice (not medical or legal) | 1, 2, 3<br>1, 2, 3 |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| Employment | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☒ A6024 Other Employment Complaint Case<br>☐ A6109 Labor Commissioner Appeals | 1, (2), 3<br>10 |
| Contract | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019 Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 2, 5<br>2, 5<br>1, 2, 5<br>1, 2, 5 |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff<br>☐ A6012 Other Promissory Note/Collections Case<br>☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11<br>5, 11<br>5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009 Contractual Fraud<br>☐ A6031 Tortious Interference<br>☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 5<br>1, 2, 3, 5<br>1, 2, 3, 8, 9 |
| Real Property | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation Number of parcels ______ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure<br>☐ A6032 Quiet Title<br>☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6<br>2, 6<br>2, 6 |
| Unlawful Detainer | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2, 6, 11 |

SHORT TITLE: Love v. US Foods, Inc. | CASE NUMBER

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Judicial Review | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus<br>☐ A6152 Writ - Mandamus on Limited Court Case Matter<br>☐ A6153 Writ - Other Limited Court Case Review | 2, 8<br>2<br>2 |
| | Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2, 8 |
| Provisionally Complex Litigation | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| Enforcement of Judgment | Enforcement of Judgment (20) | ☐ A6141 Sister State Judgment<br>☐ A6160 Abstract of Judgment<br>☐ A6107 Confession of Judgment (non-domestic relations)<br>☐ A6140 Administrative Agency Award (not unpaid taxes)<br>☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112 Other Enforcement of Judgment Case | 2, 5, 11<br>2, 6<br>2, 9<br>2, 8<br>2, 8<br>2, 8, 9 |
| Miscellaneous Civil Complaints | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only<br>☐ A6040 Injunctive Relief Only (not domestic/harassment)<br>☐ A6011 Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8<br>2, 8<br>1, 2, 8<br>1, 2, 8 |
| Miscellaneous Civil Petitions | Partnership Corporation Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121 Civil Harassment<br>☐ A6123 Workplace Harassment<br>☐ A6124 Elder/Dependent Adult Abuse Case<br>☐ A6190 Election Contest<br>☐ A6110 Petition for Change of Name/Change of Gender<br>☐ A6170 Petition for Relief from Late Claim Law<br>☐ A6100 Other Civil Petition | 2, 3, 9<br>2, 3, 9<br>2, 3, 9<br>2<br>2, 7<br>2, 3, 8<br>2, 9 |

| SHORT TITLE: Love v. US Foods, Inc. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: ☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. ☐11. | | | ADDRESS: 15155 Northam St. la Mirada CA 90638 |
|---|---|---|---|
| CITY: Los Angeles | STATE: CA | ZIP CODE: 90012 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the Central District District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: June 2, 2021

(SIGNATURE OF ATTORNEY/FILING PARTY)
Debra A. Opri, Esq.

PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet, Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).
5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.
6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | FILED<br>Superior Court of California<br>County of Los Angeles<br>06/21/2021<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: C. Monroe Deputy |
| NOTICE OF CASE ASSIGNMENT<br>UNLIMITED CIVIL CASE | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>21STCV23055 |

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✓ | Lia Martin | 16 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on 06/22/2021 (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By C. Monroe, Deputy Clerk

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.

Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

*Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

2019-GEN-014-00

FILED
Superior Court of California
County of Los Angeles

MAY 03 2019

Sherri R. Carter, Executive Officer/Clerk
By ______, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT – MANDATORY ELECTRONIC FILING FOR CIVIL

FIRST AMENDED GENERAL ORDER

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

a) "Bookmark" A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

b) "Efiling Portal" The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

c) "Electronic Envelope" A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

d) "Electronic Filing" Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

e) "Electronic Filing Service Provider" An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court. (California Rules of Court, rule 2.250(b)(8).)

f) "Electronic Signature" For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) "Hyperlink" An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) "Portable Document Format" A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format. Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs. Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) EXEMPT LITIGANTS

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) EXEMPT FILINGS

a) The following documents shall not be filed electronically:

i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

ii) Bonds/Undertaking documents;

iii) Trial and Evidentiary Hearing Exhibits

iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

v) Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format when technologically feasible without impairment of the document's image.

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

i) Depositions;

ii) Declarations;

iii) Exhibits (including exhibits to declarations);

iv) Transcripts (including excerpts within transcripts);

v) Points and Authorities;

vi) Citations; and

vii) Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document accompanying a single pleading must be electronically filed as a separate digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted. (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of: (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

i) Any printed document required pursuant to a Standing or General Order;

ii) Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

iii) Pleadings and motions that include points and authorities;

iv) Demurrers;

v) Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

vi) Motions for Summary Judgment/Adjudication; and

vii) Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents. Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver. (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

11) SIGNATURES ON ELECTRONIC FILING

For purposes of this General Order, all electronic filings must be in compliance with California Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil Division of the Los Angeles County Superior Court.

This First Amended General Order supersedes any previous order related to electronic filing, and is effective immediately, and is to remain in effect until otherwise ordered by the Civil Supervising Judge and/or Presiding Judge.

DATED: May 3, 2019

KEVIN C. BRAZILE
Presiding Judge

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS

Superior Court of California
County of Los Angeles

Los Angeles County
Bar Association
Litigation Section

Los Angeles County
Bar Association Labor and
Employment Law Section

Consumer Attorneys
Association of Los Angeles

Southern California
Defense Counsel

abtl

Association of
Business Trial Lawyers

California Employment
Lawyers Association

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆Los Angeles County Bar Association Litigation Section◆

◆ Los Angeles County Bar Association Labor and Employment Law Section◆

◆Consumer Attorneys Association of Los Angeles◆

◆Southern California Defense Counsel◆

◆Association of Business Trial Lawyers◆

◆California Employment Lawyers Association◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: | FAX NO. (Optional): | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| STIPULATION – DISCOVERY RESOLUTION | | CASE NUMBER: |

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

The parties agree that:

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

iii. Be filed within two (2) court days of receipt of the Request; and

iv. Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c. No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d. If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e. If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying ex parte for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

The following parties stipulate:

Date:

[TYPE OR PRINT NAME] ➤ [ATTORNEY FOR PLAINTIFF]

Date:

[TYPE OR PRINT NAME] ➤ [ATTORNEY FOR DEFENDANT]

Date:

[TYPE OR PRINT NAME] ➤ [ATTORNEY FOR DEFENDANT]

Date:

[TYPE OR PRINT NAME] ➤ [ATTORNEY FOR DEFENDANT]

Date:

[TYPE OR PRINT NAME] ➤ [ATTORNEY FOR ]

Date:

[TYPE OR PRINT NAME] ➤ [ATTORNEY FOR ]

Date:

[TYPE OR PRINT NAME] ➤ [ATTORNEY FOR ]

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
| --- | --- | --- |
| TELEPHONE NO.: FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | | CASE NUMBER: |

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

The parties agree that:

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, to discuss and consider whether there can be agreement on the following:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at www.lacourt.org under "Civil" and then under "General Information").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to ____________ for the complaint, and ____________ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at www.lacourt.org under "Civil", click on "General Information", then click on "Voluntary Efficient Litigation Stipulations".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR PLAINTIFF)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR DEFENDANT)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR DEFENDANT)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR DEFENDANT)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR ____________)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR ____________)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR ____________)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| INFORMAL DISCOVERY CONFERENCE (pursuant to the Discovery Resolution Stipulation of the parties) | | CASE NUMBER: |

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: _______________ (insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: _______________ (insert date 20 calendar days following filing of the Request).
4. For a Request for Informal Discovery Conference, briefly describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, briefly describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

INFORMAL DISCOVERY CONFERENCE
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| STIPULATION AND ORDER – MOTIONS IN LIMINE | | CASE NUMBER: |

This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.

The parties agree that:

1. At least ____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

The following parties stipulate:

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR PLAINTIFF)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ____________)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ____________)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ____________)

THE COURT SO ORDERS.

Date: ____________________ ____________________ JUDICIAL OFFICER

 Superior Court of California, County of Los Angeles

# ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

Advantages of ADR

- Saves Time: ADR is faster than going to trial.
- Saves Money: Parties can save on court costs, attorney's fees, and witness fees.
- Keeps Control (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- Reduces Stress/Protects Privacy: ADR is done outside the courtroom, in private offices, by phone or online.

Disadvantages of ADR

- Costs: If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- No Public Trial: ADR does not provide a public trial or a decision by a judge or jury.

Main Types of ADR

1. Negotiation: Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. Mediation: In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   Mediation may be appropriate when the parties
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   Mediation may not be appropriate when the parties
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

## How to Arrange Mediation in Los Angeles County

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

- **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com (949) 863-9800
- **JAMS, Inc.** Assistant Manager Reggie Joseph, RJoseph@jamsadr.com (310) 309-6209
- **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

These organizations cannot accept every case and they may decline cases at their discretion. They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs**
https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

Day of trial mediation programs have been paused until further notice.

**Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

# EXHIBIT B



**RXT / ALL**
**Transmittal Number: 23555188**
**Date Processed: 07/29/2021**

# Notice of Service of Process

**Primary Contact:** Ann Spitler
US Foods, Inc.
9399 W Higgins Rd
Ste 500
Rosemont, IL 60018-4992

**Electronic copy provided to:** Sarah Van Pelt
Octavia Scott
Jodie Grant
Jessamyn Lopez
Kerry Carlson
Annabel Olewinski

| | |
|---|---|
| **Entity:** | US Foods, Inc.<br>Entity ID Number 1698230 |
| **Entity Served:** | US Foods Inc., dba U.S. Food Service Inc. |
| **Title of Action:** | Sylvia Love vs. US Foods Inc., dba U.S. Food Service Inc. |
| **Matter Name/ID:** | Sylvia Love vs. US Foods Inc., dba U.S. Food Service Inc. (11441492) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Discrimination |
| **Court/Agency:** | Los Angeles County Superior Court, CA |
| **Case/Reference No:** | 21STCV23055 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 07/27/2021 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Debra A Opri<br>323-658-6774 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674 (888) 690-2882 | sop@cscglobal.com

**EXHIBIT C**

Electronically FILED by Superior Court of California, County of Los Angeles on 08/23/2021 11:16 AM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Bolden,Deputy Clerk

SEYFARTH SHAW LLP
Jonathan L. Brophy (SBN 245223)
jbrophy@seyfarth.com
Shardé T. Skahan (SBN 286157)
sskahan@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

SEYFARTH SHAW LLP
Bernard Olshansky (SBN 336251)
bolshansky@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone: (213) 270-9600
Facsimile: (213) 270-9601

Attorneys for Defendant
US Foods, Inc.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

SYLVIA LOVE,

Plaintiff,

v.

US FOODS, INC., dba U.S. FOOD SERVICE, INC.; a corporation; and DOES 1 through 50 inclusive,

Defendants.

Case No. 21STCV23055

*Assigned for all purposes to Hon. Lia Martin, Dept. 16*

**DEFENDANT U.S. FOODS, INC.'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT FOR DAMAGES**

Complaint Filed: June 21, 2021
Trial Date: None Set

Defendant US Foods, Inc. (dba U.S. Foodservice, Inc.) ("Defendant"), for itself and for no other defendant, answers the unverified Complaint for Damages ("Complaint") filed by Plaintiff Sylvia Love ("Plaintiff") as follows:

**GENERAL DENIAL**

Pursuant to California Code of Civil Procedure section 431.30(d), Defendant denies generally each allegation and each purported cause of action in the Complaint, and without limiting the generality of the foregoing, deny that Plaintiff has been damaged in any amount, or at all, by reason of any acts or omissions of Defendant.

**DEFENSES**

In further answer to the Complaint, and as separate and distinct affirmative and other defenses, Defendant alleges as follows, without assuming the burden of proof on any defense on which it would not otherwise have the burden of proof by operation of law:

**FIRST DEFENSE**

**(Failure to State a Cause of Action - All Causes of Action)**

1. Plaintiff's Complaint fails to state facts sufficient to constitute a cause of action against Defendant.

**SECOND DEFENSE**

**(Statute of Limitations - All Causes of Action)**

2. Plaintiff's claims, in whole or in part, are barred by the applicable statutes of limitations, including but not limited to Government Code sections 12960 and 12965, and Code of Civil Procedure sections 335.1, 337, 338, and 339.

**THIRD DEFENSE**

**(Failure to Exhaust Administrative Remedies – All Causes of Action)**

3. Plaintiff's claims, in whole or in part, are barred because Plaintiff has failed to exhaust her administrative remedies or to comply with the statutory prerequisites for bringing suit.

/ / /

/ / /

/ / /

**FOURTH DEFENSE**

**(Laches - All Causes of Action)**

4.      Plaintiff's claims are barred, in whole or in part, by the doctrine of laches because Plaintiff delayed unreasonably in bringing her claims.

**FIFTH DEFENSE**

**(Waiver - All Causes of Action)**

5.      Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

**SIXTH DEFENSE**

**(Estoppel - All Causes of Action)**

6.      Because of Plaintiff's own acts or omissions, Plaintiff is barred by the equitable doctrine of estoppel from maintaining this action or pursuing any cause of action alleged in the Complaint against Defendant.

**SEVENTH DEFENSE**

**(Unclean Hands - All Causes of Action)**

7.      Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

**EIGHTH DEFENSE**

**(Ratification - All Causes of Action)**

8.      Plaintiff's Complaint and each cause of action alleged therein, is barred on the ground that Plaintiff ratified Defendant's alleged actions.

**NINTH DEFENSE**

**(Failure to Mitigate Damages - All Causes of Action)**

9.      Defendant alleges, based on information and belief, that Plaintiff had the ability and opportunity to mitigate the purported damages alleged in the Complaint and failed to act reasonably to mitigate such damages.  To the extent that Plaintiff suffered any damages as a result of the facts alleged in her Complaint, which Defendant denies, Plaintiff is not entitled to recover the amount of damages alleged or any damages due to her failure to make reasonable efforts to mitigate or minimize the damages incurred.  By reason of the foregoing, Plaintiff is barred in whole or in part from recovery of damages from Defendant.

**TENTH DEFENSE**

**(Failure to Exercise Reasonable Preventive Corrective Opportunities – All Causes of Action)**

10. To the extent any of Defendant's employees or agents engaged in unlawful discriminatory or retaliatory behavior toward Plaintiff, Defendant is not liable for any such discrimination or retaliation, or Plaintiff's damages must be reduced, because Defendant exercised reasonable care to prevent and correct promptly any such behavior, and Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided or to otherwise avoid harm.

**ELEVENTH DEFENSE**

**(Workers' Compensation Preemption - All Causes of Action)**

11. Plaintiff's claims for certain damages are preempted and barred by the exclusive remedies of the California Workers' Compensation Act, Cal. Lab. Code § 3200, *et seq.*, inasmuch as they involve an employer/employee relationship subject to workers' compensation coverage, conduct of Plaintiff undertaken in the course and scope of her alleged employment with Defendant, and injuries alleged by Plaintiff to have been proximately caused by her employment with Defendant.

**TWELFTH DEFENSE**

**(Preemption - All Causes Of Action)**

12. Plaintiff's claims are barred, in whole or in part, to the extent they are preempted by federal law under 29 U.S.C. § 185 (Section 301 of the Labor Management Relations Act).

**THIRTEENTH DEFENSE**

**(After-Acquired Evidence – All Causes of Action)**

13. Plaintiff's claims are barred, or her damages, if any, are limited, to the extent she engaged in any misconduct of which Defendant was unaware until after Plaintiff's termination that provides independent legal cause for the termination of her employment.

**FOURTEENTH DEFENSE**

**(Undue Hardship - All Causes of Action)**

14. To the extent that Plaintiff requested accommodations that were not reasonable or would cause Defendant undue hardship, and thus were not required, Plaintiff's claims fail.

**FIFTEENTH DEFENSE**

**(Prompt Remedial Action – All Causes of Action)**

15. Defendant took prompt and appropriate corrective action in response to Plaintiff's complaints or stated concerns regarding the workplace, if in fact Plaintiff made any such complaints, thereby satisfying all legal duties and obligations Defendant had to Plaintiff, if any at all.

**SIXTEENTH DEFENSE**

**(Reasonable Accommodation - All Causes of Action)**

16. Plaintiff's claims are barred because Defendant was not legally required to provide reasonable accommodation to Plaintiff and, to the extent that it was so legally required, Defendant fulfilled its obligations. Neither compensatory nor punitive damages may be awarded against Defendant due to its good faith efforts to make a reasonable accommodation for Plaintiff.

**SEVENTEENTH DEFENSE**

**(Legitimate Non-Discriminatory, Non-Retaliatory Actions - All Causes of Action)**

17. Plaintiff's claims are barred, in whole or in part, because Defendant had a legitimate business reason that was non-discriminatory and non-retaliatory for all actions taken with respect to Plaintiff's employment with Defendant.

**EIGHTEENTH DEFENSE**

**(Mixed Motive – All Causes of Action)**

18. Even if Plaintiff should prove that her alleged disability or any other protected status was a substantial factor motivating the challenged actions, which Defendant denies, the same actions would have been taken based on legitimate, non-discriminatory, non-retaliatory considerations.

**NINETEENTH DEFENSE**

**(Award of Punitive Damages is Unconstitutional - All Causes of Action)**

19. To the extent Plaintiff seek punitive or exemplary damages in her Complaint, they violate the rights of Defendant to protection from "excessive fines" as provided in the Eighth Amendment to the United States Constitution and in Article I, Section 17 of the Constitution of the State of California and the rights of Defendant to procedural and substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution and under the Constitution of the State of California.

**TWENTIETH DEFENSE**

**(Managerial Privilege - All Causes of Action)**

20. Any injuries Plaintiff sustained as a result of any action by Defendant is barred to the extent that any and all decisions made and actions taken were in the exercise of proper managerial discretion and in good faith.

**TWENTY-FIRST DEFENSE**

**(Justification - All Causes of Action)**

21. Plaintiff's claims are barred, in whole or in part, by the doctrine of justification on the grounds that any purported interference with any prospective economic advantage or benefit was justified to avoid injury or harm to the interests of another.

**TWENTY-SECOND DEFENSE**

**(Scope of Authority - All Causes of Action)**

22. The Complaint, and each and every purported cause of action therein, is barred to the extent that the actions of Defendant's agents, employees, and representatives, if they occurred, were not actions taken within the course and scope of their employment.

**TWENTY-THIRD DEFENSE**

**(Setoff And Recoupment - All Causes of Action)**

23. To the extent a court holds that Plaintiff is entitled to damages or penalties, which is specifically denied, Defendant is entitled under the equitable doctrine of setoff and recoupment to offset all overpayments and/or all obligations that Plaintiff owed to Defendant against any judgment that may be entered against Defendant.

**TWENTY-FOURTH DEFENSE**

**(Offset - All Causes of Action)**

24. Any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred in whole or in part because Defendant is entitled to an offset for any monies Plaintiff received from any source after Plaintiff ceased to be employed under the doctrine prohibiting double recovery set forth by *Witt v. Jackson*, 57 Cal. 2d 57 (1961), and its progeny.

**TWENTY-FIFTH DEFENSE**

**(Satisfaction of Obligations - Fifteenth through Seventeenth Causes of Action)**

25. Any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred in whole or in part because prior to the commencement of this action, Defendant duly performed, satisfied and discharged all duties and obligations it may have owed to the Plaintiff arising out of any and all agreements, representations or contracts purportedly made by Defendant and that this action is barred by the provision of California Civil Code section 1473.

**TWENTY-SIXTH DEFENSE**

**(Lack of Specificity - Fifteenth through Seventeenth Causes of Action)**

26. Any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred in whole or in part because Plaintiff's claims for breach of contract are not alleged with the required specificity.

**TWENTY-SEVENTH DEFENSE**

**(No Meeting of the Minds - Fifteenth through Seventeenth Causes of Action)**

27. Any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred in whole or in part because there was no meeting of the minds to form an enforceable contract.

**TWENTY-EIGHTH DEFENSE**

**(Lack of Consideration - Fifteenth through Seventeenth Causes of Action)**

28. Any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred in whole or in part because the alleged contract lacks consideration.

**TWENTY-NINTH DEFENSE**

**(Plaintiff's Repudiation - Fifteenth through Seventeenth Causes of Action)**

29. Any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred in whole or in part because the terms of any alleged oral, written or implied agreement were materially breached and repudiated by Plaintiff, and Plaintiff is, therefore, entitled to no relief upon such contract.

**THIRTIETH DEFENSE**

**(Emotional Distress – Seventh and Eighth Causes of Action)**

30. Any recovery on Plaintiff's Complaint, or any purported cause of action therein, is barred in whole or in part because Defendant did not engage in intentional, reckless, or negligent conduct which would justify a claim for intentional or negligent infliction of emotional distress.

**RESERVATION OF RIGHTS**

31. Defendant does not presently know all of the facts and circumstances respecting Plaintiff's claims. Defendant has not knowingly or intentionally waived any applicable defenses and reserve the right to assert and rely on such other applicable defenses as may later become available or apparent. Defendant further reserves the right to amend its answer or defenses accordingly and/or to delete defenses that they determine are not applicable during the course of discovery.

**PRAYER**

WHEREFORE, Defendant prays for judgment as follows:

1. That Plaintiff take nothing by her Complaint;
2. That judgment be entered in favor of Defendant and against Plaintiff on all causes of action;
3. That Defendant be awarded reasonable attorneys' fees according to proof;
4. That Defendant be awarded its costs of suit incurred herein; and,
5. That Defendant be awarded such other and further relief as the Court may deem appropriate.

DATED: August 23, 2021

Respectfully submitted,

SEYFARTH SHAW LLP

By: Shardé Skahan

Jonathan L. Brophy
Shardé T. Skahan
Attorneys for Defendant
US Foods, Inc.

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
) SS
COUNTY OF LOS ANGELES )

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 601 South Figueroa Street, Suite 3300, Los Angeles, California 90017-5793. On August 23, 2021, I served the within document(s):

**DEFENDANT US FOODS, INC.'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT**

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California, addressed as set forth below.

☐ by placing the document(s) listed above in a sealed envelope or package provided by an overnight delivery carrier with postage paid on account and deposited for collection with the overnight carrier at Los Angeles, California, addressed as set forth below.

☒ by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

| | |
|---|---|
| Debra A. Opri, Esq.<br>OPRI & ASSOCIATES, APLC<br>8383 Wilshire Blvd, Suite 830<br>Beverly Hills, California 90211 | Attorney for PLAINTIFF SYLVIA LOVE<br><br>Tel. (323) 658-6774; Fax (323) 658-5160<br>Email: debraopri@msn.com |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 23, 2021, at Los Angeles, California.

Jennifer Polzin
Jennifer Polzin